GERARD C. FALLON et al., Individually and as Shareholders on Behalf of BEURET AND COMPANY, LTD., Appellants, v WALL STREET CLEARING COMPANY et al., Respondents.

First Department, August 20, 1992

## APPEARANCES OF COUNSEL

*Herbert Rubin* of counsel *(David B. Hamm* and *Noreen M. Giusti* with him on the brief; *Herzfeld & Rubin, P. C.,* attorneys), for appellants.

*Stephen G. Brody* of counsel *(Michael M. Gordon* with him on the brief; *Cadwalader Wickersham & Taft,* attorneys), for Wall Street Clearing Company and others, respondents.

## OPINION OF THE COURT

WALLACH, J.

The order appealed from having dismissed the complaint for failure to state a cause of action, its allegations must, at this stage of the action, be accepted as true *(Sanders v Winship,* 57 NY2d 391, 394). Measured under that well-settled standard, we discern several cognizable causes of action within the pleading under review, and we modify the order accordingly.

As set forth in the complaint, defendant Beuret and Company, a securities dealer-broker established in 1985, earned its profits from underwriting initial public offerings. Plaintiff Giglio was a shareholder in, and consultant to, Beuret pursuant to agreements under which Giglio would be assigned 12½% of the warrants received by Beuret in connection with its underwriting or placement of securities at public offering. In 1986 the other six plaintiffs purchased shares in Beuret in separate agreements, in exchange for contractual assignments of interest in amounts ranging from .5% to 2% of the warrants received by Beuret.

The Beuret operation was financed by credit extended on margin from defendant Wall Street Clearing Company (WSC), whose chairman was defendant Kelleher. WSC was in turn controlled by its primary lender, defendant Barclays Bank. Beuret's chief executive officer, Maucere, had his own personal trading account with WSC, a relationship that would prove to be in conflict with, and hasten the downfall of, the Beuret operation, and lead directly to this lawsuit.

When Maucere, Beuret and Beuret's customers purchased

initial public offerings of stock underwritten by Beuret, on margin from WSC, an increasing indebtedness arose in favor of the latter. In October 1987 the stock market plunged, calling for additional margin coverage. WSC was allegedly able to extract further security from Maucere by a pledge of his personal investment portfolio to cover all of Beuret's margin obligations to WSC. Coincidentally, WSC began extending additional margin credit to Maucere's personal account, even though all the assets in that account were already pledged as security for Beuret's indebtedness. Maucere used that personal margin credit to buy more stock issues that Beuret had underwritten, thus maintaining the price of such stock at artificially high prices. Credit extended by WSC to Beuret during this period was utilized for similar purpose.

The level of credit thus extended was in violation of Securities and Exchange Commission (SEC) and New York Stock Exchange (NYSE) regulations governing margin purchases, as well as National Association of Stock Dealers (NASD) requirements. To conceal these infractions, Beuret and Maucere, allegedly with knowledge and assistance from WSC and Kelleher, would "park" stock bought on margin by Beuret in the accounts of Beuret customers, unbeknownst to those customers.

On December 1, 1987 WSC extended a cash loan of $750,000 to Beuret, and additional margin credit of $350,000, in further violation of SEC/NYSE/NASD rules and regulations. Beuret returned the favor by granting WSC an option to purchase 10% of Beuret stock at a substantial discount. Thus, all defendants and Maucere were alleged to have been involved in this illicit scheme, which included the loans, extensions of credit, the "parking" of stock, etc.

Not only was this scheme illegal, but it was also fraught with risk. Predictably, Beuret's financial operations failed in February 1988. In order to bail itself out, Beuret agreed to transfer the warrants it had acquired (in which plaintiffs had a contractual interest) to WSC, as security for Beuret's and Maucere's loan obligations and margin indebtedness. Among these warrants was an underwriter's warrant for the purchase of 45,200 units of First World Cheese, Inc. (A similarly issued warrant is the subject of an interpleader action in *Pentech Intl. v Wall St. Clearing Co., 772 F Supp 807.*) At the time of transfer, WSC and Kelleher allegedly knew that those warrants were contractually committed elsewhere. The transfer to WSC was thus in derogation of that agreement, as well as a

breach of Maucere's fiduciary duty. It is further alleged that defendants knew Maucere was acting solely to salvage his own financial interests.

The complaint sets forth four claims. The first is that WSC and Kelleher tortiously interfered with plaintiffs' rights in the valuable First World Cheese warrant. Second, plaintiffs allege that WSC's acceptance of the First World Cheese warrant and its registration in WSC's name, with prior knowledge of plaintiffs' contractual rights therein, constituted a wrongful taking of plaintiffs' property. The third cause of action, asserted derivatively as corporate shareholders of Beuret, alleges that defendants, in acquiring a position of financial domination and control over Beuret, violated their fiduciary duty thereto by engaging in irresponsible lending practices, namely, the "parking" of stock in third-party accounts, and the causing of Beuret to divest itself of warrants known to be contractually obligated elsewhere. The fourth cause of action alleges, also derivatively, injury to Beuret's shareholders by reason of Maucere's breach of his fiduciary duties as an officer and director of Beuret.

The first and second causes of action were dismissed on the ground that WSC was "justified" in taking possession of the First World Cheese warrant because its later-perfected security interest was superior to plaintiffs' unperfected contract rights therein. This was error. Whatever WSC acquired was subject to Beuret's preexisting liabilities, notwithstanding the former's later perfection of a security interest. WSC's acquired interest was secured only to the extent that Beuret had an unencumbered, transferable interest. To put it another way, the assignee steps into the shoes of its assignor, and takes subject to any preexisting liabilities of the latter (UCC 8-301), basically a "first in time, first in right" rule *(September-tide Publ. v Stein & Day,* 884 F2d 675, 682).

WSC's "secured interest" in the transferred warrant would have priority over plaintiffs' contractual claims only if WSC were a bona fide purchaser, and that status cannot be attained where the transferee takes with knowledge of an adverse claim (UCC 8-302 [1]; *see, In re Legel Braswell Govt. Sec. Corp.,* 695 F2d 506). An "adverse claim" is not limited strictly to an adverse ownership interest, but rather could include, in this context, any transfer with knowledge of violation of an agreement (7 Hawkland, Alderman and Schneider, UCC Series § 8-302:05 [art 8]; *see, e.g., McMillan, Ltd. v Warrior Drilling & Eng'g Co.,* 512 So 2d 14 [Ala]; *cf., Center v Hampton Affiliates,*

66 NY2d 782). Indeed, a transferee is under obligation to investigate suspicious circumstances which might suggest the existence of an adverse claim *(First Natl. Bank v United States,* 653 F Supp 1312).

This was not—it should be noted—a contest between competing security interests. Plaintiffs assert not a security interest whose priority vis-à-vis WSC is governed by UCC 9-312, but rather a prior contract right of which defendants allegedly had notice.

█ WSC's acceptance of the warrant with knowledge of the existence of the agreement between plaintiffs and Beuret states a cause of action for procurement of breach of a contract; the burden would be on defendants to plead and prove justification for such action *(State Enters. v Southridge Coop. Section 1,* 18 AD2d 226). The motion court improperly shifted that burden to plaintiffs to plead and prove a lack of justification for such interference. Defendants' transfer of the warrant beyond the reach of parties having a contractual right therein was wrongful and arguably constituted a conversion under statute (UCC 8-315) as well as common law *(Baker's Aid v Hussmann Foodservice Co.,* 730 F Supp 1209, 1213-1214). The first and second causes of action should be reinstated.

█ The third and fourth causes of action are partially defective in that Fallon and Rubin, as counsel for plaintiffs, are precluded, under conflict of interest principles, from asserting a derivative claim on their own behalf *(Sweet v Bermingham,* 65 FRD 551). Therefore, dismissal of these claims was proper at least with respect to these two plaintiffs.

█ The third and fourth claims variously allege breach of fiduciary duty causing harm to Beuret's shareholders. The third alleges liability on the part of WSC by reason of its financial domination over Beuret, and the fourth is based upon the acts of Beuret's own chief executive officer, Maucere. The third cause was properly dismissed because there is insufficient showing that WSC exerted economic control over Beuret. The relationship between these two companies was maintained at arm's length. A debtor-creditor relationship, standing alone, does not create a fiduciary duty of the latter to the former. Furthermore, it is only by establishment of this link that a further claim could be stated against Kelleher and Barclays Bank; accordingly, dismissal of the third cause of action in its entirety was proper.

■ The fourth cause differs in that the complaint specifically alleges Maucere's knowing breaches of fiduciary duty to the company he headed, causing WSC to overextend Beuret's credit, thereby creating substantial risk to corporate assets. Here, defendants are alleged to have facilitated Maucere's scheme by allowing him, for example, to "park" his margin purchases of stock in other customers' accounts. These acts were in furtherance of Maucere's personal security, to the detriment of his company and its shareholders. "Any one who knowingly participates with a fiduciary in a breach of trust is liable for the full amount of the damage caused thereby to the *cestuis que* trust" *(Wechsler v Bowman,* 285 NY 284, 291). WSC's alleged knowing participation in the scheme sets forth a valid cause of action in this respect *(see, S & K Sales Co. v Nike, Inc.,* 816 F2d 843, 847-848). Only with respect to Barclays Bank, WSC's "primary lender", is the connection too tenuous to spell out participation, through its alleged control of the latter, such as to sustain the cause of action.

Accordingly, the order of Supreme Court, New York County (Edward J. Greenfield, J.), entered on or about October 28, 1991, as republication of an order earlier entered on September 11, 1991, dismissing the complaint in its entirety, should be modified to the extent of denying defendants' motion to dismiss the first and second causes of action and so much of the fourth cause of action as asserted by plaintiffs Hochberg, Nevyas, Rosenbaum, Winston and Giglio against defendants WSC, Beuret and Kelleher; those claims should be reinstated and remanded for further proceedings; and the order should be otherwise affirmed, without costs.

ROSENBERGER, J. P., KUPFERMAN and RUBIN, JJ., concur.

Order, Supreme Court, New York County, entered on or about October 28, 1991, as republication of an order earlier entered on September 11, 1991, modified to the extent of denying defendants' motion to dismiss the first and second causes of action and so much of the fourth cause of action as asserted by plaintiffs Hochberg, Nevyas, Rosenbaum, Winston and Giglio against defendants Wall Street Clearing Company, Beuret and Kelleher, and those claims reinstated and remanded for further proceedings and otherwise affirmed, without costs and disbursements.