**PENTECH INTERNATIONAL, INC., Plaintiff–Appellee,**

v.

**WALL STREET CLEARING CO., Defendant–Appellant–Cross–Appellee,**

**Shareholders and Consultants of Beuret & Company, Ltd., Defendant–Appellee–Cross–Appellant,**

**Helmut Meister, Defendant–Appellee,**

**Beuret & Company, Ltd., Defendant.**

**Nos. 1770, 1863, Dockets 92–7222, 92–7264.**

United States Court of Appeals, Second Circuit.

Argued June 25, 1992.

Decided Jan. 13, 1993.

Steven G. Brody, New York City (Michael M. Gordon, Evan M. Eisland, Cadwa-lader, Wickersham & Taft, on the brief), for defendant-appellant-cross-appellee.

David B. Hamm, New York City (Herbert Rubin, John M. Schwartz, Noreen M. Giusti, Herzfeld & Rubin, on the brief), for defendant-appellee-cross-appellant.

David R. Taxin, New York City (Dahan & Nowick, on the brief), for defendant-appellee.

Joyce F. Celnik, Richard S. Kalin, New York City, filed a letter brief for plaintiff-appellee.

Before NEWMAN, PRATT, and WALKER, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal concerns conflicting claims to portions of an underwriter's warrant asserted by those claiming a contractual right to portions of the warrant and by the holder of an alleged security interest in the warrant. The dispute arises on an appeal and cross-appeal from the January 24, 1992, judgment of the District Court for the Southern District of New York (Whitman Knapp, Judge). Judge Knapp's Memorandum Opinion and Order is published at *Pentech International, Inc. v. Wall Street Clearing Co.*, 772 F.Supp. 807 (S.D.N.Y. 1991). We conclude that relevant state law supports the contract claimants but that unresolved matters remain with respect to the remedy. We therefore affirm in part, vacate the judgment, and remand for further proceedings.

## BACKGROUND

Pentech International, Inc. ("Pentech"), as stakeholder, commenced an interpleader action to settle competing claims to an underwriter's warrant ("the Warrant") that entitled its holder to purchase Pentech securities. The Warrant was initially issued to Beuret & Company, Ltd. ("Beuret"), a securities broker-dealer. Beuret deposited the Warrant in a proprietary account that it maintained with its clearing broker, Wall Street Clearing Co. ("Wall Street"). The claims to the Warrant are as follows: Wall Street claims that it has a perfected security interest in the entire Warrant; seven

shareholders of Beuret ("the Shareholders")[1] each claim a contractual interest to a portion of the Warrant arising from an agreement made at the time each purchased Beuret stock; and Helmut Meister, a former Beuret employee, claims a portion of the Warrant pursuant to his employment agreement with Beuret. The Shareholders also asserted a claim against Wall Street for its tortious interference with their agreements with Beuret to transfer portions of the Warrant. Wall Street invokes the statute of frauds as a defense against the claims of five of the Shareholders.

With the exception of Anthony Giglio, each of the Shareholders contends that his purchase agreement to buy shares of Beuret provided that as long as the purchaser remained a shareholder of Beuret, Beuret would assign to him a specified percentage of any warrants it received in connection with any public offering it underwrote.[2] The Warrant was received by Beuret on June 12, 1987, in exchange for underwriting services. It entitled the holder to purchase 50,000 units, each of which consisted of five shares of Pentech common stock and an option to purchase an additional share. The Warrant also included a restriction that prohibited its transfer, sale, assignment, or hypothecation until June 5, 1989.

On June 25, 1987, Beuret agreed in writing to assign 820 units of the Warrant to Meister if he would remain in its employ, as he did, until the end of 1987. By late 1987, Beuret was having financial difficulties, in part due to the October stock market crash. Wall Street, its clearing broker, loaned Beuret approximately $1 million. Beuret was also obligated to Wall Street under their clearing agreement to indemnify Wall Street for any amounts owed by customers that Beuret had introduced to Wall Street. Beuret's financial situation continued to deteriorate, and in February 1988, Wall Street requested some sort of "protection." After several meetings, Beuret agreed to deposit in its proprietary account at Wall Street six underwriter's warrants, including the one at issue. On February 10, 1988, Beuret delivered the warrants to Wall Street, each accompanied by a transfer form signed by Beuret with a blank space for designating a transferee.

Through its conversations with officers of Beuret around the time of this transfer, Wall Street learned that various Beuret employees were entitled to a portion of the Warrant. In addition, Wall Street became aware of the Shareholders' claims no later than soon after the warrants were delivered.

Beuret closed its doors shortly after the warrants were delivered. On June 21, 1989, two weeks after the transfer restriction expired, Wall Street exercised its security interest by presenting the Warrant, along with a completed transfer form, to Pentech for reissuance of the Warrant in Wall Street's name. Pentech refused to reissue the Warrant because it had been transferred prior to the expiration of the transfer restriction. In July 1989, Pentech became aware of the Shareholders' and Meister's interest in the Warrant. In August, it filed the instant interpleader action.

Based on our holding in *Septembertide Publishing, B.V. v. Stein and Day, Inc.*, 884 F.2d 675 (2d Cir.1989), the District Court ruled that Meister's claim was superior to Wall Street's because Wall Street had notice that Meister had a valid contract claim to a portion of the Warrant, and therefore, that Beuret had no right to assign Meister's share. *See Pentech*, 772 F.Supp. at 813. The District Court also ruled in favor of the Shareholders. The Court found that the earliest time that Wall Street could be deemed to have obtained its security interest was June 5,

---

**1.** The Shareholders are Gerard Fallon, Herbert Nevyas, Lawrence Winston, Irwin Hochberg, Irving Rosenbaum, Herbert Rubin, and Anthony Giglio.

**2.** The form shareholder agreement that the Shareholders, other than Giglio, allege Beuret entered into with them provides: "so long as the Purchaser remains a shareholder of [Beuret], [Beuret] will ... assign to the Purchaser ——% of any warrants (or .5% per Unit) received by [Beuret] (net of any warrants assigned to any third party) in connection with any public offering underwritten by [Beuret]."

1989, when the transfer restriction expired. *See id.* at 814. Wall Street now concedes that this ruling was correct. Brief for Appellant–Cross Appellee at 16 n. 9. The District Court then found that Wall Street had notice of the Shareholders' claims by that date. Thus, as with Meister, Wall Street took subject to the Shareholders' claims. *See Pentech,* 772 F.Supp. at 814.

The District Court rejected Wall Street's defense based on the statute of frauds, *see id.* at 814–16, but dismissed the Shareholders' claim for tortious interference, finding that though unsuccessful, Wall Street's claims had been asserted in good faith. *See id.* at 816.

## DISCUSSION

I. *The parties' claims to the Warrant*

■ The main issue presented on this appeal is whether Wall Street's claim to the Warrant, allegedly as a secured creditor with a perfected security interest, is superior to that of the contract claimants. For a certificated security, physical possession is the only method of attachment and perfection permitted by the Uniform Commercial Code ("the UCC"). *See* N.Y. U.C.C. §§ 8–321, 8–313(1) (McKinney 1990). Beginning with the premise that Article 9 of the UCC gives Wall Street priority as a secured creditor unless the UCC provides otherwise, *see id.* § 9–201; 2 James J. White & Robert S. Summers, *Uniform Commercial Code* § 26–2, at 492–93 (3d ed. 1988), the parties dispute whether provisions of the UCC "provide otherwise."

The UCC states that "[u]pon transfer of a security to a purchaser (Section 8–313) the purchaser acquires the rights in the security which his transferor had or had actual authority to convey." N.Y. U.C.C. § 8–301(1) (McKinney 1990). "Purchaser" includes one who obtains a security interest in property. *See id.* § 1–201(32), (33) (McKinney 1964). Wall Street, citing N.Y. U.C.C. §§ 8–301, 8–313, 8–309 & Official Comment 2 (McKinney 1990), maintains that Beuret's promises to transfer portions of the Warrant to Meister and to the Shareholders did not impart any ownership rights to them because Meister and the Shareholders never received possession of the Warrants. Thus, at the time Beuret granted Wall Street a security interest, Beuret held full ownership rights in the Warrants and transferred a security interest in these rights to Wall Street. In essence, Wall Street argues that appellees' rights are limited to a breach of contract action against Beuret for its failure to assign to them a portion of the Warrant. Appellees claim that they have pre-existing contract rights in and an equitable entitlement to the Warrants as promisees of a contract to assign a non-publicly traded security and that these rights are enforceable against a subsequent transferee. Physical transfer, appellees maintain, is required only to vest legal title in the transferee. Under their interpretation, Wall Street obtained a security interest in the ownership rights possessed by Beuret net of the interests it had previously assigned to appellees.

Both parties discuss our holding in *Septembertide* in support of their position. In *Septembertide,* we held that an author's rights as the third-party beneficiary to a contract between his publisher and its paperback sub-licensee were superior to the rights of a secured creditor of the publisher. *See* 884 F.2d at 680–82. We reasoned that the publisher could not assign to the secured creditor as collateral "that which it no longer owns or controls." *Id.* at 682. In other words, the publisher could not grant a security interest in the portion of the money to be received from the sub-licensee that had previously been transferred to the author as a vested third-party beneficiary, absent the author's consent, because the publisher's rights in the collateral did not include this portion. *See id.*

Appellees contend that their case is even stronger than that of the author in *Septembertide* because they are the direct promisees of the agreements, rather than a third-party beneficiary, and because Wall Street had actual notice, rather than constructive notice. Wall Street claims that *Septembertide* is distinguishable because of the different collateral involved in the two cases: *Septembertide* involved the

right to receive royalty payments that can be transferred only by contract whereas the instant case involves ownership rights in certificated securities that can be transferred to a purchaser only by physical delivery. Thus, Wall Street contends, unlike the author in *Septembertide*, Meister and the Shareholders were not vested with ownership rights by the contracts.

If we were to rule in favor of appellees on this issue by holding that Beuret could not assign to Wall Street the portions of the Warrant previously assigned because appellees were vested with equitable rights in the Warrant, Wall Street would need to qualify as a bona fide purchaser to obtain greater rights in the property than the transferor had to give. *See* N.Y. U.C.C. § 8–302(3) (McKinney 1990). To qualify as a bona fide purchaser, Wall Street must be "a purchaser for value in good faith and without notice of any adverse claim." *Id.* § 8–302(1). An adverse claim "includes a claim that a transfer was or would be wrongful or that a particular adverse person is the owner of or has an interest in the security." *Id.* § 8–302(2). The claim may be legal or equitable. *See* U.C.C. § 8–302, Official Comment 4 (McKinney 1990). The parties dispute whether appellees' claims are appropriately characterized as an adverse claim. Appellees assert that their claims satisfy the plain language of the statute; Wall Street responds that the only equitable claims that will satisfy this definition are those "where the claimant's designee, rather than the claimant himself, had possession of the security and improperly transferred it to a third party," Reply Brief for Appellant–Cross Appellee at 22.

In sum, the primary issue for us to decide is whether the promise to transfer portions of the Warrant gave appellees any equitable rights in the Warrant. If the answer to this question is yes, Wall Street can assert priority only as a bona fide purchaser; the issue would then become whether appellees' claims qualify as "adverse claims." If the answer is no, Wall Street can assert priority without ever reaching the bona fide purchaser issue because, in that case, Beuret would have held all the ownership rights in the Warrant, both legal and equitable, and would have transferred to Wall Street a security interest in all those rights.

In deciding these difficult issues of New York state law, we are fortunate to have a precedent that is directly on point. As discussed above, Beuret transferred six warrants to Wall Street as security. One of these warrants was the subject of a lawsuit in a New York state court. In *Fallon v. Wall Street Clearing Co.*, 182 A.D.2d 245, 586 N.Y.S.2d 953 (1st Dep't 1992), the Appellate Division reversed a motion to dismiss granted in favor of Wall Street. In so doing, the Appellate Division held that:

> Whatever [Wall Street] acquired was subject to Beuret's pre-existing liabilities, notwithstanding the former's later perfection of a security interest. [Wall Street's] acquired interest was secured only to the extent that Beuret had an unencumbered, transferable interest. To put it another way, the assignee steps into the shoes of its assignor, and takes subject to any pre-existing liabilities of the latter (UCC § 8–301), basically a "first-in-time, first-in-right" rule (*Septembertide Publ., B.V. v. Stein and Day, Inc.*, 2d Cir., 884 F.2d 675, 682).

182 A.D.2d at 249, 586 N.Y.S.2d at 956. The Court went on to rule that Wall Street did not qualify as a bona fide purchaser because it had notice of adverse claims. *See id.* On November 5, 1992, the Appellate Division denied Wall Street's motion for reargument of this decision, or in the alternative, for leave to appeal the decision to the New York Court of Appeals.

As a federal court applying state law, we are generally obliged to follow the state law decisions of state intermediate appellate courts. In *West v. American Telephone and Telegraph Co.*, 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940), the Supreme Court reversed a Court of Appeals decision that had disregarded a ruling of state law by a state intermediate appellate court and adopted what it thought to be a better rule. *See id.* at 235, 61 S.Ct. at 182. The Supreme Court held:

A state is not without law save as its highest court has declared it....

Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.... This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court.... Even though it is arguable that the [highest court of the state] will at some later time modify the rule of [this] case, whether that will ever happen remains a matter of conjecture. In the meantime the state law applicable to these parties and in this case has been authoritatively declared by the highest state court in which a decision could be had.... We think that the law thus announced and applied is the law of the state applicable in the same case and to the same parties in the federal court and that the federal court is not free to apply a different rule however desirable it may believe it to be, and even though it may think that the [highest court of the state] may establish a different rule in some future litigation.

*Id.* at 236–38, 61 S.Ct. at 183–84 (citations omitted). *See also Deeper Life Christian Fellowship, Inc. v. Sobol,* 948 F.2d 79, 83–84 (2d Cir.1991).

Wall Street has offered us no "persuasive data that the highest court of the state would decide otherwise." To be sure, in *West* the federal court encountered the same issue as the state court between the same parties while here the state case involves another of the six warrants transferred by Beuret to Wall Street. And in *West* the state's highest court declined to review the intermediate court's decision while in our case, the Appellate Division denied leave to appeal to the Court of Appeals because it believed its decision was correct and did not warrant further review. Nevertheless, we do not believe we can disregard the teaching of the Supreme Court because of these immaterial differences. Such a ruling would defeat the purpose of the principle announced by the Supreme Court: to prevent the development of two conflicting systems of law, one to be applied in state court and the other to be applied to those who meet the prerequisites of federal jurisdiction. *See West,* 311 U.S. at 236, 61 S.Ct. at 183.

We also find greatly exaggerated Wall Street's fear that, should we apply the Appellate Division's holding, clearing brokers will be reluctant to finance the securities transactions of their customers because of increased risk. A party in Wall Street's position can attain priority over claims such as appellees' simply by meeting the requirements of a bona fide purchaser, that is, "a purchaser for value in good faith and without notice of any adverse claim." N.Y. U.C.C. § 8–302(1) (McKinney 1990). The bona fide purchaser rule provides the necessary protection for a clearing broker acting in good faith. Thus, we hold that Wall Street's security interest is subject to the enforceable claims of appellees.[3] We next must determine whether appellees' contract claims satisfy the statute of frauds.

## II. *The statute of frauds*

■ Under New York law, "[a] contract for the sale of securities is not enforceable by way of action or defense unless (a) there is some writing signed by the party against whom enforcement is sought ... sufficient to indicate that a contract has been made for sale of a stated quantity of described

---

**3.** We also reject Wall Street's argument that the phrase "net of any warrants assigned to any third party" in the relevant paragraph of the shareholder agreement, *supra* note 2, explicitly excludes the Warrant assigned to Wall Street from the pool of warrants that Beuret promised to the Shareholders. We hold that, as a matter of law, this provision contemplated only assign-

ments made in connection with the receipt of the Warrant by Beuret, for example, an assignment to those who assisted Beuret in the public offering.

Because of our holding on the priority issue, we do not reach Meister's argument that he is a third-party beneficiary of a contract between Wall Street and Beuret.

securities at a defined or stated price; or ... (d) the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price." N.Y. U.C.C. § 8–319 (McKinney 1990).

Although the District Court noted that five of the seven Shareholders could not produce a written shareholder agreement signed by Beuret, *see Pentech*, 772 F.Supp. at 814–15, the Court found, based on other documents, both signed and unsigned, that the requirements of section 8–319(a) were met. The District Court could not determine with certainty the specific entitlement of the five Shareholders. However, based on two unequivocal statements signed by Beuret, *see id.* at 815–16, the Court "cut the Gordian knot" by assigning to each of the five the minimum percentage of the Warrant that each would have received, calculated according to the quantity of shares each purchased, under the form contract that the Court found all parties conceded was used, *see id.* at 816. On appeal, Wall Street reiterates its claim before the District Court that five of the seven Shareholders fail to meet the requirements of the statute of frauds. One Shareholder, Gerard Fallon, cross-appeals arguing that the District Judge assigned him only 0.5% of the Warrant rather than the 1.0% to which he was entitled.

We agree with the result of the District Court; however, we base our conclusion on section 8–319(d) rather than section 8–319(a). Maucere, Beuret's chief executive officer, admitted in his deposition that the five Shareholders were entitled to a portion of the Warrant as a function of their ownership of the firm. Joint Appendix at 1140. He identified an exhibit, Meister Exhibit D, Joint Appendix at 485, as being prepared under his supervision and as being reviewed by him; Maucere also indicated that he believed the document to be correct, Joint Appendix at 1140–42. This exhibit indicated the portion of the Warrant to be assigned to each of the five Shareholders. From the 50,000 units of the Warrant, 14,-735 units were subtracted for persons oth-er than the five Shareholders, including Giglio and Meister, leaving a net of 35,265 units. From this net, the five Shareholders were assigned the following amounts: Hochberg—177 (0.5%); Winston—353 (1.0%); Nevyas—353 (1.0%); Rosenbaum—177 (0.5%); Fallon—177 (0.5%). The percentages, which we calculated using a denominator of 35,265 units, precisely match the percentages that the District Court calculated based on its review of the signed and unsigned documents. 772 F.Supp. at 816.

We hold that this document, along with the deposition of Maucere identifying the document and admitting the contractual basis for Beuret's obligation to the five Shareholders, constitutes an admission for purposes of section 8–319(d). We recognize that the phrase "the party against whom enforcement is sought" does not easily transfer into the context of an interpleader action where each party has a claim against the res. However, we understand the phrase to refer to the contracting party who is not seeking enforcement of his rights in the pending action, in this case, Beuret.

Furthermore, we reject Wall Street's argument that Meister Exhibit D is insufficiently precise with regard to quantity to satisfy the statute of frauds. Wall Street contends that because this document is inconsistent with a similar unsigned document prepared by Beuret, Fallon Exhibit W, Joint Appendix at 1095, with respect to the quantity to be assigned to each of the five Shareholders, the Shareholders cannot satisfy the stated quantity requirement of the statute of frauds. We disagree. Both documents are consistent with respect to the method of calculating the quantity due to the Shareholders. Both apply the percentage indicated above to the net amount calculated by subtracting the portion of the Warrant assigned to third parties. The difference in the results between the two documents is caused by an inconsistency in the amounts assigned to third parties and an error in subtraction in Fallon Exhibit W. We do not believe that this inconsistency undermines the sufficiency of the admis-

sion for purposes of the statute of frauds because the method of calculating each Shareholder's share is clear from the admission.

Fallon, on his cross-appeal, claims that he has produced a writing signed by Beuret that indicates that his share of the Warrant is 1.0% rather than 0.5%. Fallon has produced a shareholder agreement between Beuret, Fallon, and Robert Beuret, as principal shareholder. Robert Beuret signed the agreement on the line provided for his personal signature, but no signature appears on the line "BEURET & COMPANY, LTD. By _____." Fallon argues that Robert Beuret's signature on the personal signature line was intended in his capacity as an officer of Beuret.

Under New York law, " 'A signature of an individual who is an incorporator, officer, director, or agent of a corporation, which is intended to be an individual signature, or which is not shown to be made on behalf of the corporation, suffices as an individual signature, but not as a corporate signature, within the meaning of the statute of frauds.' " *Hasenfratz v. Berger Apartments, Inc.*, 61 N.Y.S.2d 12, 15 (Sup.Ct.1946) (quoting 37 C.J.S. *Frauds, Statute of* § 207, at 702–03 (1943)); *see also In re Selgar Realty Corp.*, 85 B.R. 235, 239 (Bankr.E.D.N.Y.1988). Because both Robert Beuret and Beuret were parties to the contract and because Robert Beuret signed only on the line designated for his personal signature and not on the line for his signature as agent for Beuret, we hold that the writing does not satisfy the requirements of the New York statute of frauds.[4]

III. *The remedy*

Even after deciding the priority issue and the statute of frauds issue in favor of appellees, we still cannot dispose of the case entirely on this appeal. In reviewing the document in which Maucere admitted Beuret's contractual obligation to the Shareholders, we notice that Beuret has also indicated that others may have an interest in the Warrant. These interests, if proven, may affect the amounts to be distributed to Wall Street and to appellees. We remand the case to the District Court to determine whether the interests of these persons should be protected or whether they are necessary parties to the pending interpleader action who should be joined pursuant to the nationwide service provisions of 28 U.S.C. § 2361 (1988). *See* 7 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1715, at 590 (2d ed. 1986) ("[A]n interpleader action cannot proceed in the absence of a party who must be joined in accordance with the standard set forth in Rule 19."). In addition, the District Court should consider whether the interests of any of the parties, other than Wall Street, *see supra* note 3, should be netted, according to the terms of the Shareholders' agreements, *see supra* note 2, prior to calculating the amount allocable to the Shareholders.

### CONCLUSION

We affirm in part, but vacate the judgment and remand to the District Court for further proceedings consistent with this opinion.

---

**4.** We decline to reach the Shareholders' claim that the District Court misapprehended the necessary elements of their claim for tortious interference of contract because the Shareholders waived this claim during argument before the District Court when they stated: "So the judgment we are asking is an either/or. If [the court does not] believe it's appropriate ... to give [us] a share of that security, then, yes, we would want damages, *but not otherwise.*" Joint Appendix at 1387 (emphasis added). Since we have held that the District Court properly awarded the Shareholders a portion of the Warrant, they have received all the relief they have requested.