386 F.Supp. 1 (1974)
CITIZENS FOR COMMUNITY ACTION AT the LOCAL LEVEL, INC., and Francis W. Shedd, Individually and on Behalf of all others similarly situated, Plaintiffs,
v.
John J. GHEZZI, Secretary of State of the State of New York, et al., Defendants.
Civ. A. No. 1973-222.
United States District Court, W. D. New York.
November 22, 1974.
*2 John J. Phelan, Buffalo, N. Y. (Moot, Sprague, Marcy, Landy, Fernbach & Smythe, Buffalo, N. Y., of counsel), for plaintiffs.
Michael G. Wolfgang, Asst. Atty. Gen., State of New York, Buffalo, N. Y. (Louis J. Lefkowitz, Atty. Gen., State of New York, New York City, of counsel), for defendants Ghezzi and Levitt.
Miles A. Lance, Asst. Niagara County Atty., Lockport, N. Y. (Samuel L. Tavano, Niagara County Atty., of counsel), for defendants Graf and Comerford.
Before TIMBERS, Circuit Judge, and BURKE and CURTIN, District Judges.
TIMBERS, Circuit Judge:

QUESTIONS PRESENTED
On these cross motions for summary judgment in an equal suffrage suit *3 seeking declaratory and injunctive relief with respect to Article IX, § 1(h)(1), of the Constitution of the State of New York (McKinney 1969)[1] (hereinafter, New York Constitution), and Section 33(7) of the New York Municipal Home Rule Law (McKinney Supp. 1974-75)[2] (hereinafter, Home Rule Law), the following are the essential questions presented:
(1) Whether dismissal of a prior action brought in the federal court by the County of Niagara, purportedly on behalf of its citizens and voters, against the State of New York which raised substantially the same issues as are raised herein, constitutes a bar to the instant class action under the doctrine of res judicata.
(2) If not, whether creation of dual voting units of unequal population within a single political subdivision of a state, consisting of the cities of a county and the areas outside of the cities, and the concomitant requirement of separate majorities in each unit for adoption in a county-wide referendum of a county charter form of local government, so dilutes and debases the rights of the county-wide majority as to violate the one man, one vote principle.
For the reasons stated below, we hold that the instant class action is not barred by dismissal of the prior action brought by Niagara County and that the challenged dual majority requirement impairs plaintiffs' constitutional rights in the respects claimed.
Accordingly, we grant plaintiffs' motion for summary judgment and deny defendants' cross motion for summary judgment; we hold that Article IX, § 1(h) (1), of the New York Constitution, and its implementing statute, Section 33(7) of the Home Rule Law, violate the equal protection clause of the Fourteenth Amendment; and we order defendants to accept for filing, and to implement, the Niagara County Charter as approved by a majority of the popular vote in the county-wide referendum held on November 7, 1972.

PARTIES TO THE ACTION
Plaintiffs are Citizens For Community Action At The Local Level, Inc. (CALL), a New York membership corporation, organized for the purpose of securing a county form of government for Niagara County; and Francis W. Shedd, a resident of the City of Niagara Falls, Niagara County, who voted in favor *4 of the adoption of the Niagara County Charter in the November 1972 referendum. Shedd sues for himself and as representative of a class consisting of those residents of Niagara County whose votes for the County Charter allegedly were impaired by the dual referendum requirement. As individuals who allege that their vote was unconstitutionally diluted and debased, Shedd and the plaintiff class have standing to sue. Gray v. Sanders, 372 U.S. 368, 375 (1963).[3]
Defendants are John J. Ghezzi, Secretary of State of the State of New York; Arthur Levitt, Comptroller of the State of New York; LaVerne S. Graf, Clerk of the Niagara County Legislature; and Kenneth Comerford, County Clerk of Niagara County, in whose office a local law must be filed in order to become effective.

JURISDICTION
This court has jurisdiction over the subject matter and the parties pursuant to the Civil Rights Act, 42 U.S.C. § 1983 (1970), and its jurisdictional implementation, 28 U.S.C. § 1343(3) (1970).
Since the action seeks injunctive relief with respect to provisions of a New York statute and the New York Constitution, a special statutory district court of three judges was convened to hear and determine the action pursuant to 28 U.S.C. §§ 2281 and 2284 (1970).

FACTS
The essential facts alleged in the amended complaint are admitted and may be briefly summarized.
On November 7, 1972, a proposed charter providing for local government, to be known as the Niagara County Charter, was presented to the voters of Niagara County at a county-wide referendum for adoption. Pursuant to the proposed charter, the people of Niagara County would have been entitled to vote for the offices of County Executive and Comptroller. Moreover, the unit of local government provided for in the proposed charter would have had general governmental powers and would have performed substantial governmental functions, including establishment of a tax rate, equalization of assessments, issuance of bonds, maintenance of county property and roads, and the administration of health and public welfare services.
Although a majority of the countywide vote favored adoption of the charter form of local government, the separate majority of voters in the areas of Niagara County outside of the cities voted against adoption.[4] Accordingly, the proposed charter was not accepted for filing and ultimate implementation by defendants because of non-compliance with the dual majority requirement of § 33(7) of the Home Rule Law.
On December 18, 1972, the County of Niagara, purporting to represent its "citizens and voters", commenced an action in the district court, seeking, inter alia, a declaration that Article IX, § 1(h)(1), of the New York Constitution, and § 33(7) of the Home Rule Law were unconstitutional as violative of the one man, one vote principle. That action was dismissed on the merits by Judge Henderson. County of Niagara, New York v. State of New York, *5 Civil 1972-656 (filed April 3, 1973)[5] (hereinafter, County of Niagara). On May 4, 1973, plaintiffs commenced the instant action seeking essentially the same relief.

CLAIMS OF THE PARTIES
Plaintiffs' essential claim is that Article IX, § 1(h)(1), and § 33(7) deny them equal protection of the laws because they violate the one man, one vote principle. In support of this claim, plaintiffs point out that, pursuant to the challenged provisions, Niagara County is partitioned into two separate voting units of unequal population, one consisting of the cities within Niagara County and the other consisting of the areas of the county outside of the cities; and that the challenged provisions require a majority vote in each unit, regardless of the total popular vote, for adoption in a county-wide referendum of a county charter form of government having general governmental powers.
Accordingly, plaintiffs demand a declaratory judgment (1) that the challenged constitutional and statutory provisions deny them equal protection of the laws in violation of the Fourteenth Amendment; (2) that the Niagara County Charter was duly adopted by a majority affirmative vote in the county-wide referendum held on November 7, 1972; and (3) that the Charter is in full force and effect as the instrument defining the form of local government for Niagara County. In addition, plaintiffs demand an injunction (1) directing defendants to file and implement the Niagara County Charter as adopted; and (2) directing that an election for the offices of County Executive and Comptroller as provided in the charter be held forthwith.
Defendants' position is twofold. They assert, first, that the instant action is barred by dismissal of the prior action brought by the County of Niagara purportedly on behalf of citizens and voters raising substantially the same issues. Second, with respect to the merits of plaintiffs' constitutional claims, defendants assert (1) that, in adopting constitutional and statutory provisions which prescribed procedures to be followed by a county in adopting a new form of government, the State of New York was exercising sovereign powers solely within the domain of state interests and therefore such provisions are insulated from judicial scrutiny; and (2) that a county-wide referendum for the adoption of a form of local government having general governmental powers, as opposed to an election of representatives in such a governmental structure, need not comply with the one man, one vote principle.
The claims of the respective parties are before us on cross motions for summary judgment.

DEFENDANTS' RES JUDICATA DEFENSE
Before reaching the merits of plaintiffs' constitutional claim, our threshold inquiry must be directed to the question of whether plaintiffs in the instant action are barred from relitigating issues considered and rejected by the district court in the prior action, County of Niagara, New York v. State of New York, supra.
Under settled law three factors must be present to support a defense of res judicata or collateral estoppel: (1) there must have been a "final judgment on the merits" in the prior action; (2) identical issues sought to be raised in the second action must have been decided in the prior action; and (3) the party against whom the defense is asserted must have been a party to or in privity with a party to the prior action. Kreager v. General Electric Company, 497 F. 2d 468, 471 (2 Cir. 1974), quoting from Zdanok v. Glidden Company, Durkee Famous Foods Division, 327 F.2d 944, 955 *6 (2 Cir.), cert. denied, 377 U.S. 934 (1964).
In the instant action, the first two factors stated above are conceded by plaintiffs. There was a final judgment on the merits in County of Niagara and the constitutional issues raised and decided there are essentially identical to those presented here.
As for the third requirement of Kreager, we hold that the private citizens who are members of the plaintiff class in the instant action are not bound by the judgment in the prior action purportedly brought on their behalf, since they were not formal parties to that action and there is no basis upon which to hold them in privity with Niagara County. See Williamson v. Bethlehem Steel Corp., 468 F.2d 1201, 1203-04 (2 Cir. 1972), cert. denied, 411 U.S. 931 (1973); 1B Moore, Federal Practice ¶ 0.411[1] (2d ed. 1974).
Absent statutory or contractual authority, a person ordinarily cannot be bound without his consent by a judgment in a prior action to which he was not a party simply because a party to that litigation purported to represent all individuals who share an interest in the subject matter of the action. Dudley v. Meyers, 422 F.2d 1389, 1393-94 (3 Cir. 1970); 1B Moore, supra, ¶ 0.411 [1], at 1253, and ¶ 0.411[3], at 1423. Cf. Kersh Lake Drainage District v. Johnson, 309 U.S. 485 (1940); United States v. Kabinto, 456 F.2d 1087 (9 Cir.), cert. denied, 409 U.S. 842 (1972). Here there is no claim either that the County of Niagara was authorized to seek vindication of the constitutional rights of its "citizens and voters" or that any member of the present plaintiff class consented to being represented in the prior action by the County.[6]
Defendants argue, however, that we must look through form to substance and they urge us to characterize County of Niagara as a class action. If that were a true class action, and assuming appropriate notice, cf. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 172-77 (1974), vacating 479 F.2d 1005 (2 Cir. 1973), and adequate representation, e. g., Hansberry v. Lee, 311 U.S. 32 (1940), the prior judgment would be binding on the plaintiffs here. The short answer to defendants' claim, however, is that County of Niagara was not brought pursuant to Fed.R.Civ.P. 23. Thus, the district court in the prior action was not called upon to make such critical initial determinations under Rule 23 as to whether the County could or would "fairly and adequately protect the interests of the class" claimed by defendants to have been represented. Fed.R.Civ.P. 23(a)(4). Nor was the court afforded the opportunity to consider the desirability or necessity of formulating provisions for notice to members of the class, Fed.R.Civ.P. 23(d)(2); cf. Eisen v. Carlisle & Jacquelin, supra, or to deal with similar procedural matters. Fed.R.Civ.P. 23(d)(5).
In short, we hold that (1) because the plaintiffs here were not parties to County of Niagara, (2) because the County had no valid authority to sue on behalf of its citizens and voters, and (3) because the prior action was not a proper class action brought pursuant to Rule 23, the third requirement of Kreager has not been satisfied. Defendants' defense of res judicata must fail.

PLAINTIFFS' CONSTITUTIONAL CLAIM
The gravamen of plaintiffs' complaint is that, by partitioning Niagara County into two separate voting units of unequal population consisting of the urban areas of the county on one hand and the rural areas on the other, and by requiring separate majorities in each for the adoption of a county charter form of local government having general governmental powers, Article IX, § 1(h)(1), and its statutory implementation, § 33(7), create arbitrary and irrational *7 classifications based solely upon residence which result in a constitutionally impermissible voting pattern.
Defendants, on the other hand, claim that, since counties are no more than subordinate governmental instrumentalities which are created by the state and which hold and exercise power subject to its sovereign will, their internal governmental structure and the procedure for adopting it are not subject to federal judicial scrutiny. In the alternative, they contend that the one man, one vote principle does not apply to the selection of a form of government.
The precise issue here presented appears to be one of first impression.[7] The Supreme Court, however, repeatedly has ruled on the scope and meaning of the one man, one vote principle in numerous decisions since the seminal case of Baker v. Carr, 369 U.S. 186 (1962). Reasoning by analogy from those cases, we hold that the dual majority requirement of Article IX, § 1(h)(1), of the New York Constitution and § 33(7) of the Home Rule Law is not insulated from judicial scrutiny and is unconstitutional because it violates the one man, one vote principle.
Defendants' claim that the challenged state procedure for adopting new forms of local government is immune from judicial scrutiny is wholly without merit. We recognize the sovereign right of a state to create political subdivisions to assist it in carrying out state governmental functions. From this it does not follow, however, merely because subordinate governmental instrumentalities exist subject to the state's sovereign will, that a state may exercise that will so as to impair constitutionally protected rights of its citizens. As the Supreme Court stated in Gomillion v. Lightfoot, 364 U.S. 339, 347-48 (1960):
"When a State exercises power wholly within the domain of state interest, it is insulated from federal judicial review. But such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right. This principle has had many applications. It has long been recognized in cases which have prohibited a State from exploiting a power acknowledged to be absolute in an isolated context to justify the imposition of an `unconstitutional condition.' What the Court has said in those cases is equally applicable here, viz., that `Acts generally lawful may become unlawful when done to accomplish an unlawful end, United States v. Reading Co., 226 U.S. 324, 357, and a constitutional power cannot be used by way of condition to attain an unconstitutional result.' Western Union Telegraph Co. v. Foster, 247 U.S. 105, 114."
Applying the principle of Gomillion in Gray v. Sanders, supra, the Supreme Court held that, although the State of Georgia was under no obligation to adopt a state primary procedure for the nomination of a candidate for federal and statewide officers, once it has done so the state was required to give "all who participat[ed] in the election . . . an equal vote . . . ." 372 U.S. at 379. Similarly, in Avery v. Midland County, 390 U.S. 474, 480 (1968), the Court held that:
"[W]hen the State delegates law-making power to local government and provides for the election of local officials . . ., it must insure that those qualified to vote have the right to an equally effective voice in the election process."
The State of New York, having chosen to create subordinate units of government, is not immune from judicial scrutiny when confronted with a claim that its exercise of sovereign power results in the imposition of unconstitutional conditions upon the voters of that political subdivision.
We turn next to the question whether the one man, one vote principle of Reynolds v. Sims, 377 U.S. 533 (1964), and *8 its progeny, has been violated by the dual majority requirement which, as here applied, has had the effect of diluting the votes of the city dwellers of Niagara County by permitting the minority rural voters to veto the adoption of the proposed charter.
Defendants concede that the requirements of Article IX, § 1(h)(1), and § 33(7) would violate that principle if applied to an election of representatives. They seek to distinguish the Gray-Reynolds-Avery line of cases, however, on the ground that they did not involve the selection by popular vote of a form of government. They argue further that the more recent decisions of the Supreme Court in Salyer Land Co. v. Tulare Water District, 410 U.S. 719 (1973), and Gordon v. Lance, 403 U.S. 1 (1971), portend a willingness on the part of the Court to sanction greater flexibility in the one man, one vote principle. They say that the dual majority requirement here challenged would pass muster under those recent decisions. We disagree.
The fact that the referendum here in question did not involve election of representatives is not fatal to plaintiffs' complaint. The Supreme Court has applied the one man, one vote principle to non-representational referenda. City of Phoenix v. Kolodziejski, 399 U.S. 204 (1970) (general obligation bonds); Gordon v. Lance, supra (municipal bonds and tax rates); Cipriano v. City of Houma, 395 U.S. 701 (1969) (municipal utility revenue bonds). Nor are we persuaded by defendants' tenuous argument that the principle is inapplicable here because the challenged referendum involved not the incurring of debt but the adoption of a form of local government. Defendants have suggested no reason grounded on precedent or policy why such a referendum, which would have created the elective offices of County Executive and Comptroller, need not conform to the one man, one vote principle, while the direct election of those officials would have been required to conform. E. g., Hadley v. Junior College District, 397 U.S. 50 (1970); Avery v. Midland County, supra. We find no merit in the suggested distinction.
Defendants place heavy reliance on what they claim is the new flexibility of the one man, one vote principle as reflected in the decisions of the Supreme Court in Salyer Land Co. v. Tulare Water District, supra, and Gordon v. Lance, supra. We think such reliance, in the context of the instant case, is misplaced.
In Salyer the Supreme Court upheld California statutes which limited the franchise with respect to the management of local water storage and flood control units to land owners of the district "by reason of its special limited purpose and of the disproportionate effect of its activities on landowners as a group. . . ." 410 U.S. at 728. Unlike the situation in Salyer, the functions which were to have been performed by the county government provided for in the proposed Niagara County Charter were of a general governmental nature. Such governmental functions clearly would have affected all residents of Niagara County. If Salyer is relevant at all, it would seem to support plaintiffs' position.
Defendants place their greatest reliance on Gordon. There the Supreme Court upheld West Virginia's constitutional and statutory requirement that political subdivisions not incur bonded indebtedness or raise tax rates beyond a stated maximum unless the proposals are approved by 60% of the popular vote. The rationale of Gordon is that a state has the right to protect minority interests and those of unborn generations, in certain substantive areas, by requiring a greater than majority vote.
Reasoning by analogy from Gordon, defendants argue that, because of the potential long-range, untold consequences of a referendum such as that here involved, the state was justified in placing the responsibility for such a fundamental change as that affecting the form of government in the hands of a super-majority. They argue further that, since each of the separate voting units within Niagara County might have *9 vetoed the adoption of the charter, the dual majority requirement did not "authorize discrimination against any identifiable class", Gordon, supra, 403 U.S. at 7, and therefore did not violate the Fourteenth Amendment.
At first blush, this argument would appear to have merit. Upon more careful analysis, however, we find Gordon to be distinguishable in these material respects:
First, the dual majority requirement does not provide, as defendants suggest, for a simple super-majority vote. Under Article IX, § 1(h)(1), and § 33(7), there is no limit whatever to the minority domination and to the dilution of the majority vote. The Supreme Court specifically declined to consider the constitutionality of such an unlimited minority veto. Gordon, supra, 403 U.S. at 8 n. 6.
Second, unlike the situation in Gordon, the dual majority requirement, as here applied, indeed did discriminate against, and did dilute and debase the vote of, an identifiable group, i. e. the city dwellers of Niagara County.
Third, the Court in Gordon reaffirmed, without qualification, its holdings in prior cases where an impermissible "dilution of voting power [was found] because of group characteristicsgeographic location . . .  that bore no valid relation to the interest of those groups in the subject matter of the election. . . ." 403 U.S. at 4. See Cipriano v. City of Houma, supra; Gray v. Sanders, supra.

We hold that defendants in the instant case have failed to sustain their heavy burden of demonstrating that the urban-rural voter unit classification imposed by Article IX, § 1(h)(1), and § 33(7), bears any relationship to, or is in any way justified by, the interests of each group in the creation of a county-wide governmental structure.
The Clerk will enter judgment for plaintiffs in accordance with this opinion. No costs.
NOTES
[1] Article IX, § 1(h)(1), of the Constitution of the State of New York provides in pertinent part:

"Counties . . . shall be empowered . . . to adopt, amend or repeal alternative forms of county government . . . . Any such form of government . . . may transfer one or more functions or duties of the county or of the cities, towns, villages, districts or other units of government wholly contained in such county to each other or when authorized by the legislature to the state, or may abolish one or more offices, departments, agencies or units of government provided, however, that no such form or amendment . . . shall become effective unless approved on a referendum by a majority of the votes cast thereon in the area of the county outside of cities, and in the cities of the county, if any, considered as one unit."
[2] Section 33(7) of the New York Municipal Home Rule Law provides in pertinent part:

"7. A charter law
(a) providing a county charter . . .
(b) . . . shall conform to and be subject to consideration by the board of supervisors in accordance with the provisions of this chapter generally applicable to the form of and action on proposed local laws by the board of supervisors. If a county charter, or a charter law as described in this subdivision, is adopted by the board of supervisors, it shall not become operative unless and until it is approved at a general election or at a special election held in the county by receiving a majority of the total votes cast thereon (a) in the area of the county outside of cities and (b) in the area of the cities of the county, if any, considered as one unit. . . ."
[3] While we find it unnecessary to reach the issue, there is some question as to whether an organization has standing to represent its members in certain cases under the Civil Rights Act, 42 U.S.C. § 1983 (1970), and its jurisdictional implementation, 28 U.S.C. § 1343 (3) (1970). E. g., Warth v. Seldin, 495 F.2d 1187, 1190-95 (2 Cir.), cert. granted, ___ U.S. ___ (1974); Aguayo v. Richardson, 473 F.2d 1090, 1098-1101 (2 Cir. 1973), cert. denied, 414 U.S. 1146 (1974).
[4] The vote on the proposed charter was as follows:

 For Against
Cities 18,220 14,914
Areas outside of cities 10,665 11,594
 ______ ______
Total 28,885 26,508

The electors of the County approved the charter by a county-wide plurality of 2375 votes.
[5] The County did not appeal from the judgment of dismissal despite the request by plaintiff Shedd that it do so.
[6] Indeed, it is not at all clear that the County of Niagara had standing to represent the interests of its citizens and voters in the prior action. Note 3 supra.
[7] With the exception, of course, of County of Niagara, the prior action.