118 F.3d 122
 Joseph FERRIS and Mildred Morrison, individually and on
behalf of all signers of the initiative petitions
filed pursuant to Section 40 of the New
York City Charter, Plaintiffs-Appellants,
v.
Carlos CUEVAS, as City Clerk of the City of New York, and
the Board of Elections of the City of New York,
Defendants-Appellees.
 No. 1465, Docket 96-9406.
 United States Court of Appeals,
Second Circuit.
 Argued March 31, 1997.
Decided July 3, 1997.
 
 Charles W. Juntikka, New York City (Charles Juntikka & Assoc., P.C., of counsel), for Plaintiffs-Appellants.
 Alan Beckoff, Office of Corporation Counsel of the City of New York, New York City (Paul A. Crotty, Corporation Counsel of the City of New York, Stephen J. McGrath and Masako C. Shiono, of counsel), for Defendants-Appellees.
 Before OAKES, KEARSE, and McLAUGHLIN, Circuit Judges.
 OAKES, Senior Circuit Judge:
 
 
 1
 Joseph Ferris and Mildred Morrison appeal the judgment entered October 30, 1996, in the United States District Court for the Eastern District of New York, Sterling Johnson, Jr., Judge, denying their request for a preliminary injunction and dismissing their complaint. Appellants had requested that the court issue an injunction ordering the City Clerk and the Board of Elections for the City of New York to place their proposed initiative petitions on the November 5, 1996, ballot. The court summarily denied the petition for injunction, and dismissed the claim.
 
 
 2
 We affirm.
 
 
 3
 * Facts
 
 
 4
 In April of 1996, three New York attorneys, Charles Juntikka, Dan Wolf, and Craig Heller, began organizing a referendum campaign to reform the New York City Charter's campaign finance reform system. They formed a non-profit corporation, Citizens for Debates & Limits on Campaign Contributions, Inc. ("CDLCC"), of which Juntikka was President. CDLCC employed college freshmen and high school seniors to gather signatures for the referendum. On September 6, 1996, CDLCC submitted 139,460 signatures on two different initiatives to the City Clerk. One petition provided for the reduction of limits on campaign contributions and increased the public financing for all candidates voluntarily participating in the City Charter's campaign finance reform system. The other required all city council candidates to participate in debates if they received public campaign financing under the Charter's reform system; all other elected city officials, including the borough presidents and the mayor, would also be required to debate if they received public funds.
 
 
 5
 On September 16, 1996, the City Clerk notified Juntikka that he refused to certify the initiative petitions on the grounds that there were insufficient valid signatures, and that the topics of the petitions were not the proper subject matter for initiative petitions under § 40 of the City Charter. On September 19, Juntikka, Charles Monaghan, and CDLCC filed a proceeding in New York County Supreme Court pursuant to Article 16 of the Election Law and § 40 of the Charter, seeking to have the initiative petitions declared valid and certified for the ballot. The state plaintiffs, acting individually and purporting to act on behalf of all signers of the petitions, claimed that the petitions complied with all provisions of applicable law, contained a sufficient number of valid signatures, and presented appropriate subjects for a referendum. They were granted an order to show cause by the Supreme Court for New York County for the requested relief. The state court matter was not a class action. No constitutional issues were raised, briefed, or argued before the state courts.
 
 
 6
 On October 22, 1996, the Supreme Court, Shainswit, J., dismissed the petition. The court ruled that all of the signatures on the petitions were "presumptively valid" because the Board of Elections had failed to submit a mandatory detailed report to support its conclusion that the number of signatures was inadequate, and therefore held that there were a sufficient number of signatures to place the initiatives on the ballot. The court nevertheless refused to certify the petitions, holding that they were legally invalid on other grounds, including the ground that campaign finance reform was not the proper subject of initiative petitions. Juntikka v. Cuevas, No. 116778/96 (N.Y.Sup.Ct. Oct. 22, 1996).[1]
 
 
 7
 The state plaintiffs appealed. On October 24, 1996, after oral argument, the Appellate Division, First Department, affirmed the Supreme Court's decision solely on the ground of improper subject matter, stating only that "[t]he County Clerk correctly rejected the initiative petitions inasmuch as the proposed amendments are not the proper subject of a referendum." Juntikka v. Cuevas, 232 A.D.2d 301, 648 N.Y.S.2d 558 (1st Dep't 1996). Juntikka requested leave to appeal, which was denied on October 29, 1996. Juntikka v. Cuevas, 88 N.Y.2d 817, 651 N.Y.S.2d 406, 674 N.E.2d 336 (1996).
 
 
 8
 Soon after, Joseph Ferris, a former state legislator, and Mildred Morrison ("Appellants") filed action in the Southern District of New York, requesting both a declaration that the actions of Cuevas and the Board violated their First Amendment rights and a preliminary injunction directing Cuevas and the Board to place the proposed initiatives on the November 5, 1996, ballot. Appellants, who were represented by Juntikka, filed the action individually and on behalf of all signers of the initiative petition. The court held a hearing on Appellants' Order to Show Cause on October 29, 1996, and summarily denied the application. In a judgment filed the following day, the court dismissed the complaint. Appellants filed Notice of Appeal on October 29, 1996.[2] Judge Jacobs of our court denied Appellants' motion for a stay and expedited appeal on October 29, 1996, as did a panel of this court, following oral argument, on November 1, 1996.
 
 II
 Discussion
 A. Standard of Review
 
 9
 We review the district court's denial of a preliminary injunction for an abuse of discretion. See Bery v. City of New York, 97 F.3d 689, 693 (2d Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 2408, 138 L.Ed.2d 174 (1997); International Dairy Foods Ass'n v. Amestoy, 92 F.3d 67, 70 (2d Cir.1996). "An abuse of discretion exists when the district court has made an error of law or of fact." Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir.1990).[3]
 
 B. Res Judicata
 
 10
 Cuevas and the Board contend that, having failed to argue a theory of federal constitutional law in the prior state action, Appellants are barred by the doctrine of res judicata from bringing this action to litigate the First Amendment claim.[4] Because we give preclusive effect to a state court judgment whenever the courts of that state would do so, 28 U.S.C. § 1738; Allen v. McCurry, 449 U.S. 90, 95-96, 101 S.Ct. 411, 415-16, 66 L.Ed.2d 308 (1980); Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4469, we look to the law of New York regarding res judicata.
 
 
 11
 "... Res judicata gives 'binding effect to the judgment of a court of competent jurisdiction and prevents the parties to an action, and those in privity with them, from subsequently relitigating any questions that were necessarily decided therein.' " Watts v. Swiss Bank Corp., 27 N.Y.2d 270, 277, 317 N.Y.S.2d 315, 320, 265 N.E.2d 739, 743 (1970) (quoting In re Shea's Will, 309 N.Y. 605, 616, 132 N.E.2d 864, 868 (1956)). "[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." O'Brien v. City of Syracuse, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 688, 429 N.E.2d 1158, 1159 (1981). See Cornwall Warehousing, 656 N.Y.S.2d at 330; see also, Reilly v. Reid, 45 N.Y.2d 24, 407 N.Y.S.2d 645, 379 N.E.2d 172 (1978) (observing that the "policy bases for Res judicata, in the sense of claim preclusion, do not permit easy definition of the 'same cause of action,' " and concluding that different legal theories generally will not "permit relitigation of claims based on the same gravamen," id., 45 N.Y.2d at 28-29, 407 N.Y.S.2d at 647-48, 379 N.E.2d at 174-75); Restatement (Second) of Judgments [hereinafter Restatement] § 24(1). "[U]nder the 'transactional analysis' approach adopted by the Court of Appeals, the doctrine of res judicata also operates to preclude the litigation of matters that could have or should have been raised in a prior proceeding arising from the same 'factual grouping,' 'transaction,' or 'series of transactions.' " Board of Managers of Windridge Condominiums One v. Horn, 234 A.D.2d 249, ----, 651 N.Y.S.2d 326, 327 (2d Dep't 1996) (citing Smith v. Russell Sage College, 54 N.Y.2d 185, 192-93, 445 N.Y.S.2d 68, 429 N.E.2d 746 (1981)); see also, Reilly, 45 N.Y.2d at 29, 407 N.Y.S.2d at 648, 379 N.E.2d at 176; Koether, 213 A.D.2d at 380, 623 N.Y.S.2d at 329-30; Restatement § 24(2).
 
 
 12
 Following a valid final judgment, therefore, res judicata bars future litigation between the same parties, or those in privity with them, on the same cause of action. Hodes v. Axelrod, 70 N.Y.2d 364, 372, 520 N.Y.S.2d 933, 937, 515 N.E.2d 612, 616 (1987); Triboro Fastener, 653 N.Y.S.2d at 961. We thus treat the claim at bar as being the "same" claim as the prior state action because it arises from the same set of facts and seeks the same remedy, despite the different legal theory advanced. The critical remaining question, then, is whether we ought to treat the prior state plaintiffs and these federal plaintiffs as though they are the "same" or in privity with each other. If they are, this action is precluded by res judicata.
 
 
 13
 The New York Court of Appeals has stated that privity "includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action." Watts, 27 N.Y.2d at 277, 317 N.Y.S.2d at 320, 265 N.E.2d at 743 (emphasis added). "Privity has also been found where a person so controlled the conduct of the prior litigation in which they were interested such that the result is res judicata against them." Tamily v. General Contracting Corp., 210 A.D.2d 564, 566, 620 N.Y.S.2d 506, 509 (3d Dep't 1994) (citing Green v. Santa Fe Indus., Inc., 70 N.Y.2d 244, 254, 519 N.Y.S.2d 793, 796, 514 N.E.2d 105, 108 (1987); Watts, 27 N.Y.2d at 276, 317 N.Y.S.2d at 320-21, 265 N.E.2d at 743-44), superseded, 234 A.D.2d 774, 651 N.Y.S.2d 221 (3d Dep't 1996).
 
 
 14
 The named state parties in the action preceding this one were Juntikka and Monaghan, two of the attorneys who spearheaded the campaign for this referendum, along with CDLCC. Juntikka and Monaghan, however, brought the suit not only in their individual capacities (presumably as signers) and in Juntikka's capacity as President of CDLCC, but also "on behalf of all signers of" the initiative petition. The federal plaintiffs, Ferris and Morrison, are signers of the initiative petitions. Appellees' argument that privity exists has three bases: first, the two groups of plaintiffs have identity of legal interest; second, the state plaintiffs purported to represent all signers of the initiative petitions; and, third, the state plaintiffs, one of whom is now Appellants' lawyer, are attempting to maintain control over a claim which they failed to litigate thoroughly in state court by handpicking federal plaintiffs. Appellants respond that, while their legal interest in the claim is the same, they are not in privity with the state plaintiffs because no legal relationship bound them prior to this lawsuit, and because the state action was never certified as a class action pursuant to N.Y. C.P.L.R § 901.[5]
 
 
 15
 This case presents a complicated question because the relationship between the parties is based upon the prior litigation and the surrounding circumstances, rather than an external contractual or pre-existing fiduciary duty.[6] Ruiz v. Commissioner of Dep't of Transp., 858 F.2d 898 (2d Cir.1988), presented the same issue on slightly different facts. The prior state plaintiffs were truck drivers who had brought an action challenging enforcement of a city truck weight limit, while the Ruiz federal plaintiffs were "in the same situation as appellants, and represented by the same counsel," id. at 901, but argued slightly different legal grounds. Our finding of privity was based upon several factors, one of which was that the two parties had had the same attorney. This was a factor which Watts had concluded is "of 'singular significance,' " though we were careful in Ruiz to state that the factor alone was "not conclusive." Id. at 903 (quoting Watts, 27 N.Y.2d at 278, 317 N.Y.S.2d at 321, 265 N.E.2d at 744).
 
 
 16
 The holdings and language of Watts, Tamily, and Ruiz compel us to hold that these federal plaintiffs are either the same as the prior plaintiffs or were in privity with them, because their interests are the same and they are controlled by the same party or parties. Appellants have admitted that their interest is identical to that of the prior plaintiffs and, thus, was represented in that action; Watts provides that privity exists where the second plaintiff's interest was represented in the prior action. While we believe that identity of interest is virtually essential for a finding of privity, we agree with Appellants that such identity by itself may not be sufficient to establish privity. Here, however, Juntikka's involvement in and control of every aspect of both the state and federal actions presents a connection of much greater magnitude than identity of interest alone.
 
 
 17
 Ruiz placed weight upon the fact that the two sets of plaintiffs shared a law firm which "formulated an overarching strategy for the two actions, which included combining the state and federal claims in one state suit." 858 F.2d at 903. Here, the parties also shared counsel (though admittedly Juntikka, the attorney in both the prior state and this federal action, far from carrying out a carefully orchestrated "overarching strategy" for the two suits, is seemingly grasping at legal straws in an attempt to correct his failure to advance the First Amendment argument in state court). It is clear from reading Ruiz that we were not intending to bar actions brought by any later plaintiff who unwittingly selects an attorney well-versed in the case and the area of law by virtue of former experience with the suit, but rather to prevent one controlling person or entity from bringing multiple suits in the names of different plaintiffs, and controlling the litigation from the shadows. Control is thus the crux of the finding of privity in a case such as this.
 
 
 18
 We need not rely solely upon Ruiz and the identity of counsel, however, as New York courts have also spoken to the issue of control with regard to parties. Watts and Tamily both provide that privity exists between actual parties and those who control the action without being formal parties to it. See also, Green, 70 N.Y.2d at 254, 519 N.Y.S.2d at 796, 514 N.E.2d at 108. Juntikka was a party to the prior action in both his individual and representative capacities, and guided the entire initiative campaign from its inception. He controlled the prior action as a party and counsel, and continues to control the present action as counsel to Appellants. We therefore have no hesitation in finding that the aspect of "control" referenced in Watts and Tamily,[7] along with our related holding in Ruiz, support a finding of privity between these sets of plaintiffs.[8]
 
 
 19
 The prior communication between Juntikka and Ferris supports the conclusion that Ferris and Monaghan may not only be in privity with the state plaintiffs, but may actually have been state plaintiffs themselves. Appellants call our attention to Citizens for Community Action at Local Level, Inc. v. Ghezzi, 386 F.Supp. 1 (W.D.N.Y.1974), and the case which vacated Ghezzi on other grounds, Town of Lockport v. Citizens for Community Action, 423 U.S. 808, 96 S.Ct. 11, 46 L.Ed.2d 24 (1975), appeal after remand, 430 U.S. 259, 97 S.Ct. 1047, 51 L.Ed.2d 313 (1977). Appellants argue that privity is not present here because the Juntikka plaintiffs had no authority to represent them in the state action. In Ghezzi, the plaintiff county brought a state court action regarding the constitutionality of a county-wide referendum, and purported to represent all of the county's voters. After the state claim was rejected, individual supporters of the referendum challenged an Article of the New York Constitution and its implementing statute as violating the U.S. Constitution, and the defendants raised the doctrine of res judicata in an attempt to bar the federal claim. The district court stated that "[a]bsent statutory or contractual authority, a person ordinarily cannot be bound without his consent by a judgment in a prior action to which he was not a party simply because a party to that litigation purported to represent all individuals who share an interest in the subject matter of the action." Ghezzi, 386 F.Supp. at 6. The second set of plaintiffs "were not formal parties to [the former] action and [thus] there [was] no basis upon which to hold them in privity with [the] County." Id. at 6. Lockport approved that ruling. Lockport, 430 U.S. at 263 n. 7, 97 S.Ct. at 1051 n. 7. Juntikka, for Ferris and Morrison, now argues to this court that he, in his capacities as one of the named plaintiffs in the state action and as counsel in that action, lacked the authority to represent all signers of the initiative petition, and that Lockport therefore prevents us from finding that his current clients are in privity with him and his former co-parties.
 
 
 20
 Lockport does not govern this case. As Ghezzi noted and Lockport affirmed, the facts of that case provided "no basis" for a finding that the individuals were in privity with the county. Not only was the earlier plaintiff a governmental body rather than a private individual, the federal plaintiffs also had no apparent relationship with the county other than being voters in it. In contrast, as we have already discussed, the relationship between the state and federal plaintiffs is much stronger here. Juntikka was the primary named plaintiff in the state action and the mastermind of the entire initiative campaign. He acted as legal counsel for himself, Monaghan, and CDLCC, and purported also to represent all other signers of the petition. He unquestionably controlled the prior action. Moreover, he kept in close contact with Ferris throughout the course of the prior action; although we do not have information as to the extent of that contact or whether Ferris gave him input during the state case, see supra note 7, we do know that Ferris knew of Juntikka's control over the case throughout the course of the state action and prior to bringing this federal action. The state and federal plaintiffs therefore had a relationship which pre-dated the federal action--both because they were co-signers of the initiative and because they had actual communication about the course of the litigation. This fact supports a finding of privity between the plaintiffs. Cf. Tamily, 210 A.D.2d at 566-67, 620 N.Y.S.2d at 509 (res judicata did not apply where the second plaintiff was not "named or served in the prior action" and where no privity existed because the second plaintiff did not involve herself in the prior action and the relationship between the two sets of plaintiffs did not arise until after the prior litigation).
 
 
 21
 Were this federal suit brought by an individual signer entirely free of Juntikka's influence and control, we might find a more compelling case for application of Lockport and Ghezzi principles. But we are not persuaded that a plaintiff who acts as his own and his co-parties' counsel, purports to represent similarly situated persons, and fails adequately to represent himself and his co-parties, may evade application of res judicata by handpicking a new plaintiff to represent, bringing a legal argument which could and ought to have been raised in the prior action, and arguing to the second court that his former assertion of authority to represent his present client was meritless. Lockport does not provide a loophole for attorney-plaintiffs such as Juntikka to manipulate the judicial system in this manner.[9]
 
 
 22
 Furthermore, Juntikka's involvement in this action in his capacity as Ferris's and Morrison's attorney as well as his communication with Ferris arguably gave him constructive authority to represent Appellants in the prior action, thereby making them co-parties to the state action. If Appellants were parties to that action, they are clearly barred by res judicata from bringing this action. Cf. Watts, 27 N.Y.2d at 276, 317 N.Y.S.2d at 320, 265 N.E.2d at 743 ("possibly coparties to a prior action" would be in privity).
 
 
 23
 We likewise dismiss the notion that Ferris and Morrison are neither in privity with nor the same as the state plaintiffs simply because the prior action was not formalized as a class action. Certainly, the judgment of a true class action with adequate representation under N.Y. C.P.L.R. § 901(a)(4) would be binding on members of the class for res judicata purposes. Cf. Ghezzi, 386 F.Supp. at * 6 (discussing class action pursuant to Fed.R.Civ.P. 23(d)(2) and (a)(4)). The inverse does not hold true, however: plaintiffs who fail to obtain a class action certification, but nevertheless assert the authority to represent other similarly situated persons and who are demonstrated to be in privity with those other persons, are not immune from application of res judicata.
 
 Conclusion
 
 24
 The district court's denial of plaintiff's request for a preliminary injunction is affirmed.
 
 KEARSE, Circuit Judge, concurring:
 
 25
 I concur in the judgment on the ground that the claims asserted by plaintiffs Joseph Ferris and Mildred Morrison are barred by res judicata, but I reach that result not because one of the plaintiffs in the prior suit, Charles Juntikka, is now their attorney and may be controlling the present action (or because Ferris and Morrison may have exercised control over Juntikka in the prior action) but simply because the rights sought to be enforced in this action and the prior action are joint rights as to which I believe New York law would hold both sets of plaintiffs to be in privity.
 
 
 26
 In general, where one party brings an action to enforce jointly held rights without joining as plaintiffs those persons who hold the rights with him, res judicata bars a subsequent action on the same claim by those joint right-holders who were not parties to the original action. For example, res judicata bars a second suit by a co-obligee of a contractual obligation (other than one arising out of a negotiable instrument) owed to two or more joint obligees, where one of the co-obligees has already maintained an action on the obligation, see Restatement (Second) of Judgments § 53 (1982) ("Restatement "); "the obligee who has brought the [prior] action in effect acts for all obligees in prosecuting the action," id. comment a (emphasis added). Similarly, a subsequent action brought by an individual partner on a partnership claim is barred where another partner has brought a prior action on the same claim, see id. § 60(2); "[t]he partner controlling the [prior] action acts on behalf of the partnership," id. comment e. See, e.g., Murry v. Eighth Ave. R. Co., 120 Misc. 784, 787, 199 N.Y.S. 716, 719 (App. Term 1st Dep't 1923).
 
 
 27
 In Parkoff v. General Telephone & Electronics Corp., 53 N.Y.2d 412, 420, 442 N.Y.S.2d 432, 436, 425 N.E.2d 820 (1981), the New York Court of Appeals reached an analogous result in the area of shareholder derivative suits, and in D'Arata v. New York Central Mutual Fire Insurance Co., 76 N.Y.2d 659, 664, 563 N.Y.S.2d 24, 27, 564 N.E.2d 634 (1990), the Court formulated its general rule broadly, stating that privity is established if the plaintiff in the current litigation
 
 
 28
 ha[s] a relationship with a party to the prior litigation such that his own rights or obligations in the subsequent proceeding are conditioned in one way or another on, or derivative of the rights of the party to the prior litigation.
 
 
 29
 Id. at 664, 563 N.Y.S.2d at 27, 564 N.E.2d 634 (emphasis added) (citing, inter alia, Restatement Introductory Note Ch. 4).
 
 
 30
 The present action, like the prior state-court action, principally seeks (a) an order requiring official recognition of two initiative petitions presented to the Board of Elections and (b) an injunction requiring the City Clerk to place the initiatives on the ballot. In my view, the rights asserted by the signers of the petitions are joint rights, for under § 40 of the New York City Charter, such an initiative petition is ineffective unless signed by at least 50,000 voters. Thus the rights of Ferris and Morrison to have the petitions upheld are rights they hold jointly with the other signers of the petitions; the other signers included the plaintiffs in the prior lawsuit. None of the individual signers of the petitions had any individual right to have the initiatives placed on the ballot; the right of each signer depended on the requisite number of other persons having signed as well. Thus, the rights of Ferris and Morrison are "conditioned ... on" the rights of their fellow petition-signers, including Juntikka and his co-plaintiffs who brought the prior state-court suit. The plaintiffs in the prior action acted, in effect, for all of the petition signers. No class certification was required, for, by reason of the joint nature of the rights asserted, if those plaintiffs had prevailed, all signers would have prevailed.
 
 
 31
 In sum, the present action, like the prior action, was an action to enforce the petition-signers' collectively held rights. I do not believe the New York courts would allow successive actions to enforce those jointly-held rights. Accordingly, I concur in the judgment affirming the dismissal of the action.
 
 
 
 [1]
 The court ruled a) that the initiatives were beyond the scope of appropriate voting language of City Charter § 40; b) that they did not pose proper amendments to the City Charter; c) that they would improperly curtail the powers of elected City Officials, and d) that the campaign finance reform provision was inconsistent with state law. Id
 
 
 [2]
 The October 29 Notice of Appeal referred only to the denial of the preliminary injunction. On December 11, 1996, the district court granted Appellants' application to amend the Notice of Appeal to also cover the October 30 dismissal of the complaint. The amended Notice of Appeal is dated December 18, 1996
 
 
 [3]
 Where "appellants seek vindication of rights protected under the First Amendment, we are required to make an independent examination of the record as a whole without deference to the factual findings of the trial court," despite the "clearly erroneous" standard of review provided for by Fed.R.Civ.P. 52(a). Bery, 97 F.3d at 693 (citing, inter alia, Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, 515 U.S. 557, 566, 115 S.Ct. 2338, 2344, 132 L.Ed.2d 487 (1995)). Because our holding today is procedurally based and does not reach the merits, however, we do not conduct this higher level of factual review
 
 
 [4]
 Although the Appellee argues that the doctrine of collateral estoppel also bars this claim, this is not the case. "Collateral estoppel, a corollary to the doctrine of res judicata, 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same.' " Cornwall Warehousing, Inc. v. Town of New Windsor (Action No. 1), --- A.D.2d ----, ----, 656 N.Y.S.2d 329, 330 (2d Dep't 1997) (quoting Ryan v. New York Tel. Co., 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487, 490 (1984)). See also, Triboro Fastener & Chem. Prods. Corp. v. Lee, --- A.D.2d ----, ----, 653 N.Y.S.2d 960, 961 (2d Dep't 1997) (citing Koether v. Generalow, 213 A.D.2d 379, 623 N.Y.S.2d 328 (2d Dep't 1995); 73 N.Y. Jur.2d, Judgments § 321). Here, Appellants do not attempt to relitigate an issue of fact or law "clearly raised in a prior action," but rather attempt to litigate an entirely new legal issue--the application of the First Amendment. The fact that the two actions arise out of the same fact pattern is appropriately considered as an aspect of res judicata, or "claim preclusion," analysis, rather than one of collateral estoppel, or "issue preclusion."
 
 
 [5]
 Section 901 provides:
 a. One or more members of a class may sue or be sued as representative parties on behalf of all if:
 
 
 [1]
 the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;
 
 
 [2]
 there are questions of law or fact common to the class which predominate over any questions affecting only individual members;
 
 
 [3]
 the claims or defenses of the representative parties are typical of the claims or defenses of the class;
 
 
 [4]
 the representative parties will fairly and adequately protect the interests of the class; and
 
 
 [5]
 a class action is superior to other available methods for the fair and efficient adjudication of the controversy
 b. Unless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action.
 
 
 [6]
 Privity may attach if the two parties have a familial relationship, although New York courts have often required more connection. See Jason H. v. John C., 226 A.D.2d 638, 641 N.Y.S.2d 377 (2d Dep't 1996) (mother and child in privity for purposes of paternity action); but see Elacqua ex rel. Tiffany DD v. James EE, 203 A.D.2d 688, 610 N.Y.S.2d 354 (3d Dep't 1994) (res judicata inappropriate in paternity action where mother had not fully litigated prior action and child had not been independently represented); see also, Fernandez v. Cigna Property and Cas. Ins. Co., 188 A.D.2d 700, 702, 590 N.Y.S.2d 925, 927 (1992) (spousal relationship does not automatically create privity). Business partners are generally held to be in privity for purposes of business activities. A to Z Assocs. v. Cooper, 161 Misc.2d 283, 613 N.Y.S.2d 512 (1993). New York courts have also held that a customer-provider relationship can create privity. Sun Ins. Co. v. Hercules Sec. Unltd., Inc., 195 A.D.2d 24, 605 N.Y.S.2d 767 (2d Dep't 1993) (armored car company's customers in privity with company for purposes of res judicata analysis). In D'Arata v. New York Cent. Mut. Fire Ins. Co., 76 N.Y.2d 659, 563 N.Y.S.2d 24, 564 N.E.2d 634 (1990) (discussing issue preclusion), an injured victim was held to be in privity with the insurer of the criminal who attacked him. New York law thus provides for a finding of privity in situations involving a wide array of relationships. See Green, 70 N.Y.2d at 253, 519 N.Y.S.2d at 796, 514 N.E.2d at 108
 
 
 [7]
 Tamily 's discussion of control is distinguishable in that it speaks specifically of a situation wherein the controlling person was a named party in the second action, whereas Juntikka was the named party in the first. Tamily, 210 A.D.2d at 566-67, 620 N.Y.S.2d at 509. Yet the distinction has no apparent significance for res judicata purposes
 
 
 [8]
 We also question whether the relationship and potential control exercised by Ferris would be enough to constitute privity. Ferris was not an initiative signer randomly selected to be federal plaintiff: he was a former state legislator whom Juntikka regularly apprised of the status of the state court action while it was pending. Not only does this go to the issue of whether Ferris was a secondary controller of the two actions, it also shows that the two sets of parties had a relationship prior to the second case, thereby bolstering a finding of privity. We rest our holding on Juntikka's involvement more than on Ferris's, however, because we would need additional facts to be certain of the extent of Ferris's involvement with the prior litigation. As Watts stated:
 Authorities are in accord that a person may so involve himself with litigation in which he is interested that the result is Res judicata against him. The character and extent of the participation in litigation which will in legal effect make one a party is most often an issue of fact. As a consequence, no single fact is determinative but all the circumstances must be considered from which one may infer whether or not there was participation amounting to a sharing in control of the litigation.
 Watts, 27 N.Y.2d at 276, 317 N.Y.S.2d at 320, 265 N.E.2d at 743-44 (citations omitted).
 
 
 [9]
 We perceive this argument to be an attempt to abuse the court system. Juntikka did not simply bring his own state action on behalf of all signers of the referendum and then belatedly realize that he had had no such authority to make such a claim of authority, and attempt to correct that error the second time around. Far from it. In actuality, he has once again made the identical claim of authority, in the names of Ferris and Morrison. His action to our court purports to represent them both "individually and on behalf of all signers of the initiative petitions." How Juntikka can stand before us making the argument that Lockport requires us to absolve him of his former improper pleading, while simultaneously making an even more improper claim on behalf of his current clients, we do not know. If we were to hold that he is not in privity with Appellants and yet were to hold against them on the merits, we have only to wonder whether he would bring yet a third claim, again purporting to represents all signers, and attempt to avoid res judicata on the basis of his lack of authority to have made that claim in the action before us today