OPINION OF THE COURT
Edward J. Greenfield, J.
This is an action against the well-known artist and designer, Gloria Vanderbilt Cooper (Vanderbilt), for breach of contract and fraud. Plaintiff Thomas A. Andrews (Andrews) who was Vanderbilt’s attorney and business advisor from 1980 through 1986, and plaintiff Christ L. Zois (Dr. Zois) who had been Vanderbilt’s psychiatrist from approximately 1973 to at least 1976, formed the partnership A to Z Associates (Associates) to exploit and market the Vanderbilt name and designs. Plaintiffs allege in their complaint that Vanderbilt breached various agreements to pay them a fixed percentage of her gross income in exchange for legal, business and advisory services.
Vanderbilt, on the other hand, contends that she was defrauded by the plaintiffs and has asserted counterclaims for breach of fiduciary duty, fraud, and rescission of various agreements she entered into with the plaintiffs. On this motion, Vanderbilt moves pursuant to CPLR 3212 for summary judgment dismissing the plaintiffs’ amended verified complaint in its entirety and further granting defendant summary judgment on her first, third, fourth, fifth and sixth counterclaims. The motion for summary judgment by Vanderbilt is premised on the findings and conclusions in a disciplinary proceeding brought against Andrews that ultimately ended, in December of 1992, with his disbarment. Vanderbilt contends that the December 13, 1991 report of a Hearing Panel of the Disciplinary Committee for the First Judicial Department (Hearing Panel), as confirmed by the Appellate Division of the First Department, is dispositive of all of the issues in this action and must be given collateral estoppel effect against the plaintiffs herein.
COLLATERAL ESTOPPEL EFFECT OF DISCIPLINARY PROCEEDINGS AGAINST AN ATTORNEY
The doctrine of collateral estoppel precludes a party from relitigating an issue which has been previously, actually and *286 necessarily decided against him or her in a prior proceeding in which there was a full and fair opportunity to litigate the point. (Kaufman v Lilly & Co., 65 NY2d 449, 455.) The doctrine is applicable not only to court decisions, but to prior determinations made in administrative forums that are "quasi-judicial” in nature and governed by "procedures substantially similar to those used in a court of law.” (Ryan v New York Tel. Co., 62 NY2d 494, 499; see also, Johnson v Penn Mut. Life Ins. Co., 184 AD2d 230, 231, lv denied 80 NY2d 757.)
"[T]he burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the issue” (Ryan v New York Tel. Co., supra, at 501; Capital Tel. Co. v Pattersonville Tel. Co., 56 NY2d 11, 18; Schwartz v Public Adm’r of County of Bronx, 24 NY2d 65, 73). The opponent, on the other hand, has the burden of establishing the absence of a full and fair opportunity to litigate the issue in the administrative hearing. (Ryan v New York Tel. Co., supra, at 501; Capital Tel. Co. v Pattersonville Tel. Co., supra, at 18.)
An issue of first impression is presented. Plaintiffs point out that no New York court has ever held that issues determined in an attorney disciplinary proceeding would result in collateral estoppel of the attorney with respect to those issues in a subsequent civil action. They argue that the disciplinary committee sits not to resolve private rights, but to decide whether an attorney has the necessary integrity and probity to be an officer of the court. However, it is equally true that no court has ever declined to apply the doctrine of collateral estoppel to issues determined in attorney disciplinary proceedings.
The doctrine of collateral estoppel can be used whether or not the causes of action (or charges) are the same, as long as the underlying issue of fact or law as to which collateral estoppel is sought to be applied in the subsequent civil action was material to the administrative proceeding and essential to the decision rendered therein. (Ryan v New York Tel. Co., supra, 62 NY2d, at 500.) While the ultimate issue before the Hearing Panel was Andrews’ fitness to practice law, as discussed below, the Hearing Panel made specific findings of fact regarding his dealings with Vanderbilt, which findings are identical to issues presented in this civil action.
Stevenson v Goodmar (148 AD2d 217), upon which plaintiffs rely to negate the use of disciplinary proceedings as a basis for *287 collateral estoppel, is distinguishable. In that case, the Third Department recognized that disciplinary proceedings against a doctor for sexually assaulting a patient could be, in appropriate circumstances, collateral estoppel in a subsequent tort action by the patient against the doctor. However, it was inappropriate there because "[a] ruling in favor of plaintiff herein would effectively make the administrative agency in a disciplinary proceeding the ultimate fact finder, with only limited judicial review, in any tort action arising out of the alleged misconduct, thereby depriving a defendant of a number of valuable rights traditionally associated with civil actions, including the constitutional right to a trial by jury.” (148 AD2d, at 221.) Sanchez v Orozco (178 AD2d 391) also involved discipline of a doctor for sexual abuse of a patient and the subsequent action for personal injuries where the scope of appellate review of the prior determination was limited by CPLR article 78. Here, in contrast, the parties have previously waived a jury trial of the issues in this case, and the Appellate Division’s review and confirmation of the findings of the Hearing Panel’s report was not limited by the restraints applicable to a CPLR article 78 review of determinations of a State Board for Professional Medical Conduct. To the contrary, the Appellate Division makes all determinations de nova and may substitute its findings and judgment for that of the Hearing Panel. (Matter of Kahn, 38 AD2d 115, 123, affd 31 NY2d 752.)
Plaintiffs argue further that attempts to invoke "offensive” collateral estoppel, based on the findings of a nonjudicial body or agency have uniformly been rejected. They contend that the disciplinary proceeding was initiated by Vanderbilt’s new lawyer shortly after this action was commenced, the strategy being to move the scope of this litigation from this court to another forum at which Andrews would be at a disadvantage.
There is no absolute bar to the "offensive” use of collateral estoppel with respect to administrative findings. (See, e.g., Ward v Harte, 794 F Supp 109 [SD NY 1992].) However, as noted by the Court of Appeals in Matter of Halyalkar v Board of Regents (72 NY2d 261, 269-270), the use of offensive collateral estoppel by nonparties may, in some situations, violate the concept of fairness underlying the doctrine. In Halyalkar, the Board of Regents was not permitted to base a finding of professional misconduct by a doctor on a guilty plea in a consent order entered before the New Jersey Board of Medical Examiners. By signing the consent order, the doctor indicated *288 that he did not wish to contest the charges stated and that he wanted to accept the minimal sanction. Thus the Court reasoned that the pertinent issue — the doctor’s submission of false insurance forms — had not been actually litigated or resolved in New Jersey (78 NY2d, at 268), and that its application of collateral estoppel under these circumstances would be unfair. As discussed below, neither of those concerns are present in this case.
Here, collateral estoppel is sought to be applied to the specific findings by a unanimous Hearing Panel of the Disciplinary Committee, made after a hearing lasting 31 days, at which the attorney had the right to present documentary and testimonial evidence in his defense and cross-examine the client whose complaint initiated the disciplinary proceeding. The Panel’s findings were then unanimously affirmed by the Appellate Division, which found that the conduct of the attorney warranted disbarment. This court therefore concludes that as a matter of law administrative disciplinary findings against an attorney can be used, to the extent the findings are applicable, as dispositive of those issues in a civil action. Is such estoppel equally applicable to the attorney’s nonlawyer partner and their commercial partnership?
COLLATERAL ESTOPPEL AGAINST DR. ZOIS AND A TO Z ASSOCIATES
The doctrine of collateral estoppel has been used where an issue has previously been decided against a party or those in "privity” with that party. (Gilberg v Barbieri, 53 NY2d 285, 291; Gramatan Home Investors Corp. v Lopez, 46 NY2d 481, 486; Geraci v Bauman, Greene & Kunkis, 171 AD2d 454, 455; Baldwin v Brooks, 83 AD2d 85, 87-88.) The connection must be such that the interests of the nonparty were effectively represented in the prior action (Baldwin v Brooks, supra, at 88). As noted by the Court of Appeals: "In cases involving the relationship of principal and agent, master and servant, or indemnitor and indemnitee, the liability of more than one party turns on, or is dependent upon, identical issues.” (Israel v Wood Dolson Co., 1 NY2d 116, 119.)
Andrews had commenced the business partnership with Dr. Zois known as A to Z Associates for the purpose of acting as an agent for managing the affairs of designers, including Vanderbilt. Andrews’ activities were performed on behalf of Associates, the entity to which Andrews paid all commissions *289 received by him from Vanderbilt. As partners, Andrews and Dr. Zois were clearly in privity with respect to all of the dealings with Vanderbilt which are the subject of this action, and none of the plaintiffs had conflicting interests in the disciplinary proceeding that should permit them to relitigate the same issues in this action.
Furthermore, Dr. Zois was in fact a participant in the disciplinary hearings. He was called as a witness and testified on Andrews’ behalf (see, Geraci v Bauman, Greene & Kunkis, supra, at 455). Due to the serious allegations of misconduct committed by him as well as various provisions of New York’s Partnership Law,[1] Dr. Zois clearly had every incentive to assist Andrews in the disciplinary proceedings.
FULL AND FAIR OPPORTUNITY TO LITIGATE
Plaintiffs argue that they did not have a "full and fair” opportunity to litigate the issues. Factors to be considered in that connection include: (1) the nature of the forum; (2) the importance of the claim in the prior proceeding; (3) the incentive and initiative to litigate and the actual extent of litigation; (4) the competence and expertise of counsel; (5) the availability of new evidence; (6) the differences in the applicable law; and (7) the foreseeability of future litigation. (Ryan v New York Tel. Co., 62 NY2d 494, 501, supra; Gilberg v Barbieri, 53 NY2d 285, 292, supra; Schwartz v Public Adm’r of County of Bronx, 24 NY2d 65, 72, supra.)
Clearly, the hearing before the Hearing Panel had many of the attributes of a court proceeding. After an investigation lasting two years, the chief counsel of the Disciplinary Committee filed a detailed statement of charges against Andrews, which he was entitled to and did in fact file a 24-page answer. The charges against Andrews, and his defenses, were tried before the Hearing Panel for 31 separate days resulting in a 4,581-page transcript and hundreds of pages of exhibits. Andrews, Dr. Zois and Vanderbilt were all cross-examined at length and 15 other witnesses were presented in Andrews’ defense. Andrews was represented by counsel throughout the *290 proceedings. The Hearing Panel issued a 58-page report detailing its findings, conclusions and recommendations. Using the same standard of proof as in a civil proceeding — fair preponderance of the evidence (Matter of Capoccia, 59 NY2d 549, 552-553) — the Hearing Panel sustained three of the six charges against him. On May 30, 1991, more than two months after the conclusion of matters before the Hearing Panel, Andrews filed a motion to reopen the proceedings pursuant to Rules of the Appellate Division, First Department (22 NYCRR) § 605.16, on the basis of newly discovered evidence, which request was carefully considered by the Hearing Panel before its denial and specifically addressed in its report.
On July 27, 1992, the Disciplinary Committee petitioned the Appellate Division for an order (1) confirming the Hearing Panel’s report, and (2) disbarring Andrews. Andrews, by his attorney, vigorously opposed the petition and requested a hearing de nova before a different panel. In a Per Curiam opinion and an order dated December 17, 1992, the Appellate Division, First Department, granted the motion to confirm the report of the Hearing Panel and Andrews was disbarred, effective immediately. (Matter of Andrews, 184 AD2d 195.) His motion for leave to appeal to the Court of Appeals was denied on April 1, 1993.
Despite this, Andrews insists that the procedures followed by the Disciplinary Committee did not afford him a full and fair opportunity to contest the issues. First, he contends that he was denied discovery of "critical” evidence. Although the disciplinary procedures do not provide for pretrial discovery, prior to the start of the hearings on October 23, 1989, Andrews did have the benefit of discovery, for he had conducted discovery in this case, including a deposition of Vanderbilt in August 1989 and extensive document discovery.
Andrews contends that he was prejudiced by the fact that a majority of the Hearing Panel was not present during many of the hearing sessions particularly when he was presenting his defense and thus they could not judge his credibility or that of his witnesses;[2] that counsel for the Disciplinary Committee unilaterally handpicked the Hearing Panel; and that he was denied effective assistance of counsel because his *291 attorney was denied an adjournment and had to simultaneously work on a criminal trial and the disciplinary hearing. All of these arguments were raised before the Hearing Panel; were raised in Andrews’ 155-page memorandum to the Appellate Division in opposition to the Disciplinary Committee’s petition to confirm the Hearing Panel’s report; and raised in Andrews’ jurisdictional memorandum to the Court of Appeals following his disbarment. The Appellate Division found these arguments to be "entirely lacking in any semblance of merit” and found ample support for the Hearing Panel’s findings that he was guilty of egregious professional misconduct. (Matter of Andrews, supra, at 198.)
Finally, Andrews’ contention that the Appellate Division did not specifically adopt any of the findings of the Hearing Panel is incorrect. The Appellate Division granted the Disciplinary Committee’s motion to confirm the entire report, not just the recommendation that Andrews be disbarred. In any event, the findings and conclusions of the Hearing Panel may be the basis for the application of collateral estoppel even without the confirmation of the Appellate Division (Ryan v New York Tel. Co., supra, at 499; Johnson v Penn Mut. Life Ins. Co., 184 AD2d 230, 231, supra).
Faced with disbarment, Andrews most certainly had an incentive to, and did in fact, vigorously litigate the issues in the disciplinary proceeding. Andrews had to be aware, or should have been, that the Hearing Panel’s findings could have collateral estoppel effect in view of the similárity of the issues in this pending civil action.
Accordingly, this court finds that Andrews had a full and fair opportunity to litigate the issues and that plaintiffs are estopped from contesting any issues which were actually decided against them and which were material to the decision of the Hearing Panel.[3]
SIMILARITY AND MATERIALITY OF THE ISSUES
The basic requirements for collateral estoppel having been met, the court must determine whether Vanderbilt has met her burden of demonstrating that the various issues in this lawsuit are identical to issues resolved in the disciplinary proceeding and that these issues were material and necessary to the conclusions of the Hearing Panel.
*292 In the disciplinary proceeding, Andrews was charged with making various improper payments to himself and others while acting as Vanderbilt’s lawyer and business manager. Andrews was charged with violating Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]), which "[prohibits] conduct involving dishonesty, fraud, deceit, or misrepresentation.” In count II, Andrews was charged with entering into an improper arrangement with a nonlawyer, Dr. Zois.
The Hearing Panel found that "[b]y early 1980, and with the able assistance of Dr. Zois, Andrews began misappropriating [Vanderbilt’s] assets and diverting them to himself and Dr. Zois”. Despite the conflict of interest inherent in the arrangement created by the 1980 agreement, they found that Andrews never advised Vanderbilt to seek independent advice. In addition, the report states that Andrews deliberately failed to inform her of important facts, including the fact that he had formed Associates with Dr. Zois, her former psychiatrist, to which Andrews transferred over $1.5 million of Vanderbilt’s funds. The Hearing Panel also found that, "[i]n performing the [1980] Agreement, Andrews misappropriated sums from [Vanderbilt] in excess of the compensation allotted to him under the [1980] Agreement.” Ail of the above charges regarding improper payments were found to be substantiated.
The Hearing Panel’s findings regarding Andrews’ fraud and deceit in the negotiation and performance of the 1980 agreement' and Andrews’ breach of his fiduciary duty to Vanderbilt, together with the Panel’s complete rejection of Andrews’ charges against Vanderbilt, demonstrate that the allegations of the first, second and third causes of action cannot be sustained and must be dismissed as a matter of law.
It is clear that an attorney’s violation of his ethical duties to his client results in denial of all compensation (Silbiger v Prudence Bonds Corp., 180 F2d 917, 920-921 [2d Cir 1950], cert denied 340 US 831; Condren v Grace, 783 F Supp 178 [SD NY 1992]). While the law abhors a forfeiture, this is not a case involving a mere technical breach of contract (see, Fifty States Mgt. Corp. v Pioneer Auto Parks, 46 NY2d 573), but a gross breach of an attorney’s professional and fiduciary duties to his client as well as fraud and deceit while acting as the client’s lawyer and business adviser. Dr. Zois and Associates are also liable to Vanderbilt under the well-settled principle of law that " '[a]ny one who knowingly participates with a fiduciary in a breach of trust is liable for the full amount of *293 the damage caused thereby’ ” (Fallon v Wall St. Clearing Co., 182 AD2d 245, 251, quoting Wechsler v Bowman, 285 NY 284, 291).
Accordingly, Vanderbilt is entitled to recover against plaintiffs on her first counterclaim the entire amount of fees and compensation paid to Andrews and Associates during the period of their disloyalty. The court awards Vanderbilt summary judgment against plaintiffs on her first counterclaim in the amount of $1,383,199.41.
Vanderbilt is also entitled to summary judgment on her third counterclaim to recover five unauthorized payments Andrews made to Dr. Zois, totaling $97,300, allegedly for professional psychiatric services rendered to Vanderbilt between 1973 to 1982. These same five unauthorized payments to Dr. Zois were the subject of count I of the statement of charges.
In sustaining this portion of count I, the Hearing Panel found that Vanderbilt had never authorized, or had any knowledge of these payments, and that the payments were "unauthorized and fraudulent.” Thus, the fraud practiced upon Vanderbilt in connection with these checks, the very subject of Vanderbilt’s third counterclaim, was actually and necessarily decided by the Hearing Panel.
FOURTH AND FIFTH CAUSES OF ACTION AND SIXTH COUNTERCLAIM
Plaintiffs’ fourth and fifth causes of action and Vanderbilt’s fourth, fifth and sixth counterclaims relate to the agreements which are the subject of this court’s decision in the related case of Gloria Vanderbilt Home Furnishings v Cooper (index No. 104783/93). There the court held that collateral estoppel could not be applied against a corporation created by Andrews, a separate legal entity in which others held a majority interest, and as to which Vanderbilt, for $1.6 million, had ratified the grant of a perpetual license to use her name in marketing.
FOURTH AND FIFTH COUNTERCLAIMS
As discussed in this court’s memorandum decision in Gloria Vanderbilt Home Furnishings v Cooper (supra), the Hearing Panel concluded only that with respect to the 1982 agreements Andrews had not made full disclosure of the possible *294 conflicts of interest involved and should have recommended independent counsel. To the extent that Vanderbilt’s fourth counterclaim seeks a declaration that the 1982 agreement with the corporation is void and unenforceable, it has already been held there is no viable cause of action against it. In 1985, Vanderbilt explicitly reaffirmed and ratified the 1982 agreements, so neither the 1982 nor the 1985 agreements may be deemed void.
CONCLUSION
For the foregoing reasons, Vanderbilt’s motion for summary judgment dismissing the amended verified complaint in its entirety is granted. Vanderbilt’s motion for summary judgment on her counterclaims is granted only to the extent of granting her judgment against the plaintiffs on the first counterclaim in the amount of $1,383,199.41; and judgment against the plaintiffs on the third counterclaim in the amount of $97,300 plus interest from the dates of each of the five payments to Dr. Zois. The second counterclaim is dismissed as moot, the fourth and fifth counterclaims are dismissed for the reasons set forth above and the sixth counterclaim is severed.
[Portions of opinion omitted for purposes of publication.]

. Partnership Law §20 provides that every partner is an agent of the partnership for purposes of its business. Section 24 renders the partnership liable for loss or injury caused by the wrongful acts of a partner; section 25 provides that a partnership is bound by a partner’s breach of trust; and, pursuant to section 26, all partners are jointly and severally liable for everything chargeable to the partnership under sections 24 and 25.

. Three members of the Hearing Panel, Messrs. Gold, Irom and Liggio, were in attendance throughout the hearings. The other three members who participated in the Panel’s deliberations and decision read the transcript of those portions not heard by them in accordance with Rules of the Appellate Division, First Department (22 NYCRR) § 605.22 (c).

. After the submission of this motion, and before release of this decision, the court was informed that Andrews had died.