In re Christ ZOIS, Debtor.

Gloria Vanderbilt Cooper, Plaintiff,

v.

Christ Zois, Defendant.

Bankruptcy No. 95–41543 (BRL).
Adversary No. 98–8101A.

United States Bankruptcy Court,
S.D. New York.

March 5, 1999.

See also 184 A.D.2d 195, 591 N.Y.S.2d 406, 613 N.Y.S.2d 512.

Jerome Walsh, Lane & Mittendorf LLP, New York City, for Plaintiff.

Bruce J. Zabarauskas, Gerard Catalanello, Baer Marks & Upham LLP, New York City, for Defendant–Debtor.

BURTON R. LIFLAND, Bankruptcy Judge.

Judgment Creditor–Plaintiff, Gloria Vanderbilt Cooper ("Vanderbilt"), commenced this adversary proceeding against Defendant and chapter 7 debtor, Christ Zois (the "Debtor"), seeking a determination that her judgment debt is non-dischargeable under section 523(a)(2)(A) and (a)(4) of title 11 of the United States Code (the "Bankruptcy Code"). This non-dischargeability action arises out of alleged fraud committed by the Debtor, a former psychiatrist and close friend of Vanderbilt, and Andrews, Vanderbilt's former attorney. Vanderbilt now moves for summary judgment arguing that the Debtor is collaterally estopped from relitigating issues already determined by the New York Supreme Court and a Disciplinary Committee Hearing Panel and which have been subjected to appellate review. The Debtor has cross-moved for summary judgment on the same grounds.

*Background*

At the outset, I note that this non-dischargeability action follows a long and tor-tured history in the state courts including multiple trial and appellate court decisions. *A to Z Assocs. v. Cooper,* 232 A.D.2d 196, 648 N.Y.S.2d 74 (N.Y.App.Div.1996); *A to Z Assocs. v. Cooper,* 215 A.D.2d 161, 626 N.Y.S.2d 143 (N.Y.App.Div.1995); *Gloria Vanderbilt Home Furnishings, Inc. v. Cooper,* 215 A.D.2d 162, 626 N.Y.S.2d 135 (N.Y.App.Div.1995); *Matter of Andrews,* 184 A.D.2d 195, 591 N.Y.S.2d 406 (N.Y.App.Div.1992), *lv. denied,* 81 N.Y.2d 912, 597 N.Y.S.2d 930, 613 N.E.2d 962 (1993); *A to Z Assocs. v. Cooper,* 161 Misc.2d 283, 613 N.Y.S.2d 512 (N.Y.Sup. Ct.1993) ("A to Z I"), *aff'd,* 215 A.D.2d 161, 626 N.Y.S.2d 143 (N.Y.App.Div.1995). The foregoing state court decisions describe an illicit and secret partnership between a psychiatrist (the Debtor) and a lawyer founded on a conspiracy to isolate and defraud a mutual patient and client, Vanderbilt; a partnership in which the Debtor used knowledge obtained from Vanderbilt's psychiatric treatments to assist Andrews in plundering her assets. At each judicial intersection, Andrews and the Debtor have been found to be acting in a fraudulent cooperative, the purpose of which was embezzlement of Vanderbilt's funds. The following background is culled from relevant decisions and the pleadings submitted in these proceedings.

The Debtor saw Vanderbilt as a psychiatric patient for a three-year period beginning in 1973 and ending in 1976. After their doctor-patient relationship ended, Vanderbilt and the Debtor remained friends. Vanderbilt, regarding the Debtor as a confidant, continued to discuss her personal and financial problems with the Debtor.

At the Debtor's urging,[1] Vanderbilt discharged her old attorney, Newman Lawl-

---

1. The record indicates the Debtor alleged that    a long time friend of Vanderbilt, an unrelated

er, and retained a childhood friend of the Debtor, Andrews,[2] as her new attorney. In 1980, Andrews and Vanderbilt entered into a written agreement (the "Service Agreement"), whereby Andrews would provide legal, business advisory, management and agency services to Vanderbilt in exchange for ten percent of her earnings after deducting commissions payable to third party agents. Andrews and Vanderbilt operated under the Service Agreement for its stated term, three years. After the Agreement expired, Andrews continued to pay himself commissions but at the increased rate of twenty percent and both parties continued to operate under the Service Agreement beyond its stated term.

Also in 1980, at Andrews' instruction, Vanderbilt terminated her long time accountant entrusting Andrews with complete control of Vanderbilt's finances. Finally in 1980, without Vanderbilt's knowledge, the Debtor and Andrews formed a secret partnership, prophetically named A to Z Associates ("A to Z"), from which they received equal distributions of the earnings secured from Vanderbilt. During the period in which A to Z was operational, Andrews paid A to Z and himself in excess of 1.5 million dollars from Vanderbilt's earnings. The majority of those commissions and fees were paid to Andrews who endorsed them to A to Z for the benefit of himself and the Debtor.

During the period just after Andrews gained exclusive control of Vanderbilt's finances, Andrews began paying the Debtor, without Vanderbilt's knowledge, for alleged past and future medical services. Andrews signed and delivered five checks to the Debtor.

$31,000, dated December 10, 1980, with the notation "Medical Services 1976, 75, 74 & 73";

$30,300, dated January 9, 1981, with the notation "Psych./Med.–1977 thru 1980";

$12,000, dated September 16, 1981, with the notation "Retainer for 1981";

$12,000, dated January 14, 1982, with the notation "1st half 1982 retainer";

$12,000, dated July 12, 1982.

After Andrews was discharged by Vanderbilt in 1986, he and the Debtor brought an action (the "Civil Action") in the Supreme Court of the State of New York (the "N.Y. Supreme Court") against Vanderbilt seeking recovery of fees and commissions under the Service Agreement. Vanderbilt raised six counterclaims in the Civil Action against Andrews, the Debtor and A to Z. Vanderbilt alleged (1) breach of fiduciary duties Andrews and the Debtor owed to Vanderbilt; (2) repeating the previous allegations but limiting the requested recovery to amounts over and above that due under the Service Agreement; (3) fraud with respect to payments made to the Debtor by Andrews under the guise of psychiatric services rendered by the Debtor from 1973 to 1982; (4) breach of fiduciary duty with respect to Gloria Concepts, Inc. ("Gloria Concepts"), a home furnishings company allegedly fraudulently transferred to Andrews; (5) fraud and deceit with respect to facts asserted in the first and fourth counterclaims; and (6) breach of fiduciary duty and fraud and deceit with respect to facts asserted in the first and fourth counterclaims and including additional facts surrounding Gloria Concepts.

party, Leila Hadley, also referred Andrews to Vanderbilt. Vanderbilt maintained that it was the Debtor's urging that compelled her to employ Andrews.

2. Andrews was, at various times in his representation of Vanderbilt, associated with different firms. A fact that is not relevant to these proceedings.

While the Civil Action was pending, in 1988, Andrews was charged with six counts of professional misconduct (the "Charges"), before the Disciplinary Committee for the First Judicial Department of New York. The six counts included: (I) improper payments to the Debtor [Zois] and commingling Vanderbilt's funds with his own, (II) improper relationship with a non-lawyer, the Debtor, (III) engaging in transactions with Vanderbilt in which Andrews had a conflict of interest, (IV) failure to maintain complete books and records and render appropriate accounts, (V) failure to promptly deliver client property, and (VI) false testimony to the disciplinary committee at a deposition. After numerous adjournments at Andrews request, the Disciplinary Committee Hearing Panel (the "Hearing Panel") convened for *thirty-one days of trial, produced 4,581 pages of transcripts and hundreds of exhibits*. The Debtor testified at the trial for Andrews and was cross-examined. In 1991, the Hearing Panel issued a fifty-eight page decision (the "Report"). The Report sustained the first three counts in the Charges by *clear and convincing* evidence and recommended that Andrews be disbarred. The Hearing Panel found counts four, five and six in the Charges could not be sustained.

The Hearing Panel determined that the Debtor's participation in the trial was extensive and his testimony lacked credibility. The Hearing Panel made the following findings with respect to the Debtor's and Andrews' participation during the 31 days of trial.

The Panel determined that respondent and [the Debtor] both had testified untruthfully during the hearing on material issues. They were skillful witnesses who departed from the truth only when necessary to accomplish their purpose. During the many days and lengthy sessions at which both of them testified, the Hearing Panel found their demeanor to be quite revealing; they clearly projected their dishonesty to the Panel members.

Moreover, much important testimony given by Andrews and [the Debtor] was utterly incredible. At times it conflicted with documentary evidence, and it often defied common sense. .

(Report, p. 8)

Also, below are some of the Hearing Panel's findings regarding the Debtor's and Andrews' participation in the scheme to defraud Vanderbilt.

By early 1980, and with the able assistance of [the Debtor], Andrews began misappropriating [Vanderbilt's] assets and diverting them to himself and [the Debtor]. Taking advantage of the complete trust which [Vanderbilt] placed in them, her neglect of business matters and total inattention to detail, [Andrews] utilized various subterfuges and devises to purloin [Vanderbilt's] assets.

(Report, p. 6)

On or about February 1, 1980, [Andrews] and [the Debtor] formed a partnership named "A to Z Associates" in which they were equal partners. This partnership was the recipient of [Vanderbilt's] funds taken under the Agreement, and otherwise. Over the next six years, more than $1.5 million of [Vanderbilt's] funds were tran[s]ferred by Andrews to this entity, and 50% of these funds went to [the Debtor].
* * * *

In addition, the entire arrangement was deceitful since it was done without [Vanderbilt's] knowledge or consent. [Vanderbilt] was unaware of the fact that relationship with [the Debtor] had become commercial in nature.

(Report, pp. 18, 19)

A six year scheme to misappropriate assets from a client, accomplished with

the client's former psychiatrist and trusted friend, surely demonstrate unfitness to practice law.

(Report, p. 52)

The Appellate Division for the First Department confirmed those findings in a published decision dated December 17, 1992. *Matter of Andrews,* 184 A.D.2d 195, 591 N.Y.S.2d 406 (N.Y.App.Div.1992), *lv. denied,* 81 N.Y.2d 912, 597 N.Y.S.2d 930, 613 N.E.2d 962 (1993).

On September 24, 1993, the N.Y. Supreme Court rendered a decision (the "Decision") in the Civil Action granting Vanderbilt's motion for summary judgment against the Debtor, Andrews and A to Z on her first and third counterclaims and dismissed the Complaint based on the findings and conclusions issued by the Hearing Panel in the Report. *A to Z Assocs. v. Cooper,* 161 Misc.2d 283, 613 N.Y.S.2d 512 (N.Y.Sup.Ct.1993) ("A to Z I"), *aff'd,* 215 A.D.2d 161, 626 N.Y.S.2d 143 (N.Y.App.Div.1995). In a thorough analysis, the N.Y. Supreme Court found that the Report was entitled to collateral estoppel effect as the Hearing Panel was quasi-judicial in nature. *A to Z I,* 161 Misc.2d at 285–88, 613 N.Y.S.2d at 515–17. The N.Y. Supreme Court found that collateral estoppel could be used against *the Debtor* and A to Z as they were in "privity" with Andrews and that Andrews had a full and fair opportunity to litigate. *Id.* The N.Y. Supreme Court found that, because of the provisions in New York partnership law that make partners liable for partnership debts arising out of acts of other partners acting within the scope of the partnership, the Debtor had *every incentive to assist Andrews in the disciplinary proceedings. A to Z I,* 161 Misc.2d at 289, 613 N.Y.S.2d at 517. The N.Y. Supreme Court dismissed the second counterclaim as moot and the fourth and fifth counterclaims because they "relate to agreements which

are the subject of this court's decision in a related case.... There the court held that collateral estoppel could not be applied against a corporation created by Andrews, a separate legal entity[, Gloria Concepts]." *Id.* Additionally, the N.Y. Supreme Court severed the sixth counterclaim. The N.Y. Supreme Court found *the Debtor,* Andrews and A to Z each jointly and severally liable to Vanderbilt for $1,383,199.41 on her first counterclaim and $97,300 on her third counterclaim plus interest for a total judgment of $1,669,562.96.

Vanderbilt and Andrews appealed the Decision, and on May 9, 1995, the Appellate Division for the First Department (the "Appellate Division") issued a decision affirming. *A to Z Assocs. v. Cooper,* 215 A.D.2d 161, 626 N.Y.S.2d 143 (N.Y.App. Div.1995) ("A to Z II"). The Appellate Division affirmed the Decision against Andrews, the Debtor and A to Z stating that:

we agree with the [N.Y. Supreme Court] that the findings of fact made by the Hearing Panel in the disciplinary proceeding against Andrews ... are entitled to collateral estoppel effect ... and that the Hearing Panel's finding of misconduct against Andrews estops ... the other plaintiffs, who were in privity with him, from contesting that all of the compensation paid to them by [Vanderbilt] was wrongfully obtained and should be returned.

*A to Z II,* 215 A.D.2d at 161–62, 626 N.Y.S.2d at 144.

The Appellate Division also stated that collateral estoppel would not bar the use of defenses on the fourth and fifth counterclaims as they related to Gloria Concepts which was not named in the N.Y. Supreme Court complaint, not a party to the Charges or in privity with Andrews and could not be related back to the N.Y. Supreme Court complaint. Also, the Ap-

pellate Division found that "the record does not show that appellant has a prima facie case against any party under the fourth or fifth counterclaim." *Id.*

An involuntary petition was filed against the Debtor on April 11, 1995. Subsequently, an order for relief was entered and, on January 23, 1998, Vanderbilt commenced this adversary proceeding seeking a determination that her debt is non-dischargeable. Vanderbilt now moves for summary judgment arguing that the Debtor is barred by collateral estoppel from contesting the non-dischargeability of this debt. The Debtor has cross-moved for summary judgment arguing that Vanderbilt is collaterally estopped from pleading fraud because the N.Y. Supreme Court dismissed Vanderbilt's fifth counterclaim which was based on fraud.

*Discussion*

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223 (2d Cir. 1994).

Summary judgment is appropriate if, in light of the evidence presented, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

*Collateral Estoppel*

The threshold issue in deciding whether there are no genuine issues as to any material fact in these proceedings is whether collateral estoppel is appropriate under these facts. I find there are no genuine issues of material fact to be decided as all of the relevant facts and allegations have already been determined by state court and disciplinary proceedings. The doctrine of collateral estoppel is calculated to prevent relitigation of specific issues that were decided in a prior proceeding by a court of competent jurisdiction. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 336 n. 23, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). It is well settled that collateral estoppel may be used in dischargeability actions where there has been a prior decision. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Section 1738 of title 28 of the United States Code requires that a federal court give effect to at least the *res judicata* and collateral estoppel rules of the state when a state-court judgment is in question. *See Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *Kelleran v. Andrijevic,* 825 F.2d 692, 694 (2d Cir.1987), *cert. denied,* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988). The state court judgment must be given "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered," *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), when preclusive effect stems from the actual litigation and resolution of the issue in a prior state court proceeding. *Haring v. Prosise,* 462 U.S. 306, 313–16, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983); *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 481–83,

102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Cameron v. Fogarty*, 806 F.2d 380, 384 (2d Cir.1986), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987).

■ Under New York law, a party is collaterally estopped from relitigating an issue in a second proceeding if (1) "the issue as to which preclusion is sought [is] identical with the issue decided in the prior proceeding," (2) "the issue [was] necessarily decided in the prior proceeding," and (3) "the litigant who will be held precluded in the present proceeding ... had a full and fair opportunity to litigate the issue in the prior proceeding." *Capital Telephone Co. v. Pattersonville Telephone Co.*, 56 N.Y.2d 11, 17, 451 N.Y.S.2d 11, 13, 436 N.E.2d 461, 463 (1982). *See also Cameron*, 806 F.2d at 384. "The burden of proving collateral estoppel is on the proponent to demonstrate the identicality and decisiveness of the issue." *Capital Telephone*, 56 N.Y.2d at 17, 451 N.Y.S.2d at 13, 436 N.E.2d at 463.

■ The state court decided key issues with respect to collateral estoppel and this court should not disturb those findings. *See Kelleran*, 825 F.2d at 694. The N.Y. Supreme Court and Appellate Division have determined under New York law that: the Hearing Panel operated as a quasi-judicial body and the Report is entitled to collateral estoppel effect, *A to Z II*, 215 A.D.2d at 161–62, 626 N.Y.S.2d at 144; *A to Z I*, 161 Misc.2d at 285–88, 613 N.Y.S.2d at 515–17; collateral estoppel should be applied against the Debtor and A to Z as they were in privity with Andrews, *A to Z II*, 215 A.D.2d at 162, 626 N.Y.S.2d at 144; *A to Z I*, 161 Misc.2d at 288–89, 613 N.Y.S.2d at 517–18; Andrews had a full and fair opportunity to litigate; *A to Z II*, 215 A.D.2d at 162, 626 N.Y.S.2d at 144; *A to Z I*, 161 Misc.2d at 288–89, 613 N.Y.S.2d at 517–19; and that the Debtor and A to Z are estopped from relitigating issues decided by the Hearing Panel, *A to Z II*, 215 A.D.2d at 162, 626 N.Y.S.2d at 144; *A to Z I*, 161 Misc.2d at 288–89, 613 N.Y.S.2d at 517–19. These elements have been decided and affirmed as a matter of New York law and need not be discussed further.

■ There are other issues that need to be revisited in light of these non-dischargeability proceedings. The remaining issues that require analysis in the context of these proceedings and section 523 of the Bankruptcy Code are (1) whether the issue as to which preclusion is sought is identical with the issue decided in the prior proceeding and (2) whether the issue was necessarily decided in the prior proceeding. The issue as to which preclusion is sought must be identical to the issue decided in the prior proceeding. *Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir.), *cert. denied*, 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993). Collateral estoppel will apply in a second proceeding that involves separate claims if the claims involve the same issue, *Midwest Mechanical Contractors, Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 751 (5th Cir. 1986), and the subject matter of the suits may be different as long as the requirements for collateral estoppel are met. *United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir.1994).

The issues to be decided under section 523(a)(4) of the Bankruptcy Code are whether Andrews or the Debtor committed fraud, embezzlement and whether Andrews was in a fiduciary relationship with Vanderbilt under federal law. The issue of fiduciary relationship under federal law aside, identical issues were before the Hearing Panel and the N.Y. Supreme Court. The Hearing Panel and the N.Y. Supreme Court were required to decide whether Andrews made payments to the Debtor without Vanderbilt's consent or

knowledge. They were asked whether Andrews misappropriated funds from Vanderbilt by taking commissions and fees not due him. They were asked, by virtue of Andrews' position as Vanderbilt's attorney, by operation of the Service Agreement and by Andrews' acts to isolate Vanderbilt from independent financial oversight, whether Andrews was in complete control of Vanderbilt's finances. They were asked what was the nature of the partnership and business relationship in existence between Andrews and the Debtor as it related to Vanderbilt, Andrews' client. Lastly, one of the charges heard by the Hearing Panel was whether Andrews violated DR 1–102(A)(4) which prohibits "conduct involving, dishonesty, fraud, deceit, or misrepresentation." DR 1–102(A)(4).

██ The same issues are before this court and involve identical fact finding and analysis. The fact that they have different designations and carry different forfeitures is of no moment. In order to decide Vanderbilt's non-dischargeability claims, this court is required to make the same determinations, elicit identical testimony and review the same documents. The record before me is complete and fulfills even the most specific and technical requirements of the section 523(a)(4).

Resolution of the issues mentioned was necessary to the Hearing Panel's and the N.Y. Supreme Court's determination. The charges required a Hearing Panel to determine whether Andrews was paying the Debtor without authorization, embezzling and misappropriating money and what relationship Andrews had to Vanderbilt that allowed such free exercise. The Hearing Panel and the N.Y. Supreme Court examined the existence and nature of the partnership between the Debtor and Andrews. I find that all of the elements of collateral estoppel are present such that the Debtor is barred from relitigating these issues. I need not determine whether Vanderbilt's judgment is non-dischargeable under section 523(a)(2)(A)[3] as I find this debt is non-dischargeable under section 523(a)(4).

*523(a)(4)-Fraud or Defalcation While Acting in a Fiduciary Capacity and Embezzlement*

██ Section 523(a)(4) of the Bankruptcy Code provides:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt ... for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C. § 523(a)(4) (1994).

There are two theories under section 523(a)(4) that would compel a finding that Vanderbilt's debt is non-dischargeable. The first is that Andrews and the Debtor embezzled Vanderbilt's money within the meaning of section 523(a)(4). The second is that *the Debtor* is liable under section 523(a)(4) for Andrews' and the Debtor's joint-fraud committed while Andrews acted in a fiduciary capacity to Vanderbilt or, alternatively, that the fraud is imputed to the Debtor as a partner of A to Z who acted as a full participant in that fraud. Vanderbilt must prove by a preponderance of the evidence that her debt is non-dis-

---

**3.** Section 523(a)(2)(A) of the Bankruptcy Code provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-
(A) false pretenses, false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . . .

11 U.S.C. § 523(a)(2)(A) (1994).

chargeable. *Grogan v. Garner*, 498 U.S. at 286, 111 S.Ct. 654. As noted previously, the Hearing Panel made its findings employing the clear and convincing evidence standard.

### 1. Embezzlement

■■■■■ The definition of "embezzlement" is determined according to federal common law. *Moonan v. Bevilacqua (In re Bevilacqua)*, 53 B.R. 331, 333 (Bankr. S.D.N.Y.1985). Common law has defined embezzlement as the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Id.* (citing *Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct. 294, 40 L.Ed. 422 (1895)). To prove embezzlement the claimant must show that the debtor appropriated the funds for his own purposes and that he did so with fraudulent intent or deceit. *In re Kressner*, 155 B.R. 68, 74 (Bankr.S.D.N.Y. 1993). Unlike debts arising out of fraud or defalcation, those arising out of embezzlement need not involve a fiduciary. *Bevilacqua*, 53 B.R. at 333.

■■■■ Andrews paid to the Debtor $97,300 in a series of five checks. The Hearing Panel closely examined documents surrounding these payments and the relevant surrounding circumstances and found Andrews' and the Debtor's explanation for these payments entirely unbelievable. The Hearing Panel found that these payments were unauthorized by Vanderbilt and, specifically, fraudulent. The finding of the Hearing Panel are such that appropriation of these funds was shown to be wrongful and with the requisite fraudulent intent.

Andrews also misappropriated money over and above that allowed to him under the Service Agreement. The Hearing Panel determined that Andrews:

Paid himself a commission without deducting the fees and commission of third party agents;

Wrongfully paid himself twenty-percent commission for a stated period of time;

Wrongfully paid himself an improper commission from the sale of Vanderbilt's apartment;

Wrongfully paid himself a broker's fee on a loan to which he was not entitled;

Wrongfully drew a series of checks totaling $51,089; and

Took his fiancé and paid for an unauthorized trip to London.

In each of these cases, the Hearing Panel rejected Andrews' explanation finding these payments unauthorized and in violation of DR 1–102(A)(4) which prohibits "conduct involving, dishonesty, fraud, deceit, or misrepresentation." DR 1–102(A)(4). The Hearing Panel found that misappropriation of these funds was shown to be with the requisite fraudulent and deceitful intent. I, therefore, find that Andrews and *the Debtor* are collaterally estopped from arguing they did not embezzle within the meaning of section 523(a)(4).

### 2. Fraud and Defalcation While Acting in a Fiduciary Capacity

■■■■■ To sustain a claim for fraud or defalcation under section 523(a)(4) of the Bankruptcy Code, fiduciary capacity must first be determined. *See DeRosa v. Jacone (In re Jacone)*, 156 B.R. 740 (Bankr. S.D.N.Y.1993); *Zohlman v. Zoldan*, 226 B.R. 767 (S.D.N.Y.). The definition of "fiduciary capacity" is a matter of federal law. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934). The broad, general definition of fiduciary, involving confidence, trust and good faith, is inapplicable to dischargeability proceedings under section 523(a)(4). *Id.* Section 523(a)(4) applies only to express or technical trusts. *Id.* The fiducia-

ry relationship must exist prior to the act creating the debt; a trust relationship cannot be said to arise merely from the wrongful conduct itself or implied at law. *Id.*

In *The Andy Warhol Foundation for the Visual Arts, Inc. v. Hayes (In re Hayes)*, 1998 WL 108002 (S.D.N.Y.), the court dealt with the issue of whether an attorney is a fiduciary within the meaning of section 523(a)(4). The *Warhol* court found that "only where the attorney in such relationship is required, by operation of statute, common law or contract, to hold property in an 'express or technical trust' does the requisite fiduciary relationship exist for the purposes of section 523(a)(4)." *Id.* *2 (citing *In re Kane*, 48 F.2d 96, 98 (2d Cir.1931)). *See also Ducey v. Doherty (In re Ducey)*, 160 B.R. 465 (Bankr.D.N.H. 1993). In *Ducey*, the court found that where the attorney was responsible for holding property of the client and the relevant professional ethics code creates a duty to do so with care, the attorney acts in a fiduciary capacity to the client. *Ducey*, 160 B.R. at 469–70. *See also Ball v. McDowell (In re McDowell)*, 162 B.R. 136, 137–39 (Bankr.N.D.Ohio 1993).

The Hearing Panel stated that "[a] lawyer who exercises virtually complete control over a client's financial, business and legal affairs has a duty to manage those affairs honestly (Canon 1), and in accordance with the highest fiduciary standards (Canons 5, 7 and 9). In the Present case, the evidence shows that [Andrews] plundered [Vanderbilt's] funds." (Report, 7.) The N.Y. Supreme Court stated that this was "a gross breach of an attorney's professional and fiduciary duties while acting as the client's lawyer and business advisor." *A to Z I*, 161 Misc.2d at 292, 613 N.Y.S.2d at 520.

Additionally, the findings of the Hearing Panel established an express or technical trust in favor of Vanderbilt as created by the Service Agreement and violated by Andrews. The Service Agreement was more than a mere "retention agreement" providing for certain legal services. The Service Agreement bestowed on Andrews complete authority over Vanderbilt's finances. Andrews was more than an attorney to Vanderbilt. He was her lawyer, business manager, agent, accountant and bookkeeper. He was entrusted with control over her property and had a ethical and contractual duty to uphold. His role, as established by the Service Agreement, was that of a fiduciary under section 523(a)(4) of the Bankruptcy Code.

Fraud has generally been found to involve intentional deceit. 4 Collier on Bankruptcy, ¶ 523.10(1)(a) (Lawrence P. King ed., 15th ed. rev.1998). The Hearing Panel found the misappropriations discussed above were all performed with the requisite fraudulent intent. These findings are sufficient to show actual intent to defraud within the meaning of section 523(a)(4).

*The Liability of the Debtor and/or Imputing Liability to the Debtor*

Section 523(a)(4) provides that a debtor is not discharged from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Section 523(a)(4) merely requires that such debt arise out of fraud committed by a fiduciary. The plain language of section 523(a)(4) does not require that the debtor be in such fiduciary capacity and *allows another in privity with the debtor to have the required fiduciary relationship. See* 11 U.S.C. § 523(a)(4). Specifically, section 523(a)(4) excepts from discharge, debts derived for fraud committed while a party acted in a fiduciary capacity. In this case, the debt owed to Vanderbilt is based on

acts committed by *the Debtor* and Andrews that capitalized on Andrews' fiduciary relationship with Vanderbilt. Liability for this debt did not arise solely from a partnership obligation, but, out of a joint-fraud committed by the Debtor and a fiduciary (Andrews). The N.Y. Supreme found that *the Debtor* knowingly participated with Andrews in his breach of trust and *the Debtor* is liable for the damages caused by that breach. *A to Z I*, 161 Misc.2d at 292–93, 613 N.Y.S.2d at 520. In sum, there are sufficient findings of fact to establish the Debtor's liability under section 523(a)(4) for the joint-fraud and that Vanderbilt's judgment should be excepted from discharge.

Alternately, Vanderbilt argues convincingly that the liability of Andrews should be imputed to the Debtor for the purposes of section 523(a)(4). While it may not be necessary to impute Andrews fraud to the Debtor as discussed above, this courts finds that liability for Andrews acts is imputed to the Debtor. The majority view among the courts is that fraud may be imputed to an innocent partner for the purpose of a non-dischargeability action. *See, e.g., BancBoston Mortgage Corp. v. Ledford (In re Ledford)*, 970 F.2d 1556 (6th Cir.1992); *Luce v. First Equipment Leasing Corp. (In re Luce)*, 960 F.2d 1277 (5th Cir.1992). Some courts have refused to impute liability to debtor-partners without evidence of fraudulent acts committed by them. *See, e.g., Hamilton v. Betz (In re Betz)*, 64 B.R. 248 (Bankr.N.D.Ohio 1986); *In re Rutkowski*, 2 B.R. 677 (Bankr.S.D.N.Y.1980). However, the facts before me do not present the question of whether to hold an innocent partner liable for fraudulent acts of his partner. The findings in the Report, as adopted in the Decision, detail Andrews' and *the Debtor's* coordinated scheme to fraudulently misappropriate funds and em-

bezzle from Vanderbilt. The Report found that the Debtor and Andrews committed "a six year scheme to misappropriate assets from [Vanderbilt]." (Report, 52). The Report also found that the Debtor's "activities were quite reprehensible .... reveal[ing] to Andrews intimate personal facts about [Vanderbilt] which he learned from her during psychiatric treatments, and [the Debtor] used knowledge of [Vanderbilt] which he gained during such treatments to assist Andrews' lawyer in preparing to cross examine [Vanderbilt]." Furthermore, the Debtor fully participated in the Hearing; the Debtor testified extensively and was cross-examined; and the Debtor had every incentive to testify truthfully given the prospect of partnership liability.

Andrews was found to be acting within the scope of the partnership when he acted wrongfully. He remitted all fees and commissions to the partnership for the benefit of Andrews and the Debtor. Andrews, whether wrongfully or not, assigned his rights under the Service Agreement to the partnership.

The Debtor correctly points out that *Ledford* and *Luce* were decided under section 523(a)(2)(A) and not under section 523(a)(4). However, the Debtor provides no plausible rationale for holding imputation of liability to section 523(a)(2)(A). Neither the plain language nor the purpose of section 523(a)(4) prevents this court from imputing liability as others have in section 523(a)(2)(A) cases. The only case to consider the issue of imputation of liability under 523(a)(4) found that it was appropriate and that the court should apply the 523(a)(2)(A) imputation analysis. *See Deodati v. M.M. Winkler and Assocs. (In re M.M. Winkler and Assocs.)*, 209 B.R. 397, 406 (Bankr. N.D.Miss.1996). In that case, the court found it could not impute liability to the

debtor because the debtor did not benefit from the fraud. *Id.* In this case, we have a specific finding from the Hearing Panel that the Debtor benefitted substantially from the fraud.

Thus, I find that liability for Andrews' acts are imputed to the Debtor for the purposes of section 523(a)(4) as the record clearly supports the finding that the Debtor was Andrews' partner and participant in the scheme to defraud Vanderbilt.

*The Debtor's Cross-motion*

■■■■ The Debtor also seeks to use collateral estoppel in his cross-motion for summary judgment. The Debtor argues that Vanderbilt is collaterally estopped from asserting claims relating to fraud because the N.Y. Supreme Court and Appellate Division dismissed Vanderbilt's fifth counterclaim which pleads fraud and deceit. As stated above, "[t]he burden of proving collateral estoppel is on the proponent to demonstrate the identicality and decisiveness of the issue." *Capital Telephone,* 56 N.Y.2d at 17, 451 N.Y.S.2d at 13, 436 N.E.2d at 463. The Debtor has not met his burden of showing either identicality and decisiveness of the issues decided by the N.Y. Supreme Court and Appellate Division.

The Debtor argues that Vanderbilt plead fraud and deceit in her fifth counterclaim by repeating the allegations contained in the first counterclaim as well as the fourth counterclaim. The Debtor argues that the N.Y. Supreme Court in dismissing the fifth counterclaim found as a matter of law that the facts plead in the first counterclaim did not rise to the level of fraud because those facts from the first counterclaim were repeated in the fifth counterclaim. As argued by Vanderbilt, and what is clear from the record is that the N.Y. Supreme Court dismissed the fifth counterclaim based on facts plead with respect to Gloria Concepts and the fourth counterclaim and not with respect to facts plead in the first counterclaim. As stated in the Decision, Gloria Concepts is an entity determined by the court to be separate from Andrews, the Debtor or A to Z and, thus, could not be bound by collateral estoppel. The Debtor points to no convincing evidence, that in dismissing the fifth counterclaim, the N.Y. Supreme Court decided or the Appellate Division affirmed on grounds related to the first counterclaim and not facts solely related to Gloria Concepts. While Vanderbilt did plead facts contained in her first counterclaim, there is no indication from the record that either she wanted the court to take the first counterclaim and consider it apart from the fact surrounding Gloria Concepts or that the court considered the first counterclaim when dismissing the fifth counterclaim. In fact, the N.Y. Supreme Court stated that "the Fourth, Fifth and Sixth counterclaim relate to agreements which are the subject of this court's decision in the related case of Gloria Vanderbilt Home Furnishings, Inc. v. Cooper, et al. # 104783/93." *A to Z I,* 161 Misc.2d at 293, 613 N.Y.S.2d at 520. The record makes clear that the Debtor's arguments are of no avail and give little credence to his theory that Vanderbilt's claims are barred by collateral estoppel.

The Debtor additionally argues that contrary to findings in the Decision as affirmed by the Appellate Division, the Report of the Hearing Panel as an administrative agency cannot be given collateral estoppel effect in relation to the Debtor. The Debtor cites a recent case *Abiele Contracting, Inc. v. New York City School Contr. Auth.,* 91 N.Y.2d 1, 689 N.E.2d 864, 666 N.Y.S.2d 970 (1997) for that proposition. Upon a cursory review of *Abiele,* it is clear that the case is entirely inapplicable and, in fact, supports a finding of collateral estoppel effect of the

Hearing Panel. *Abiele* provides that for an administrative agency's findings to have collateral estoppel effect the decision must be "quasi-judicial" in nature and must have jurisdiction. The N.Y. Supreme Court and Appellate Division both found the Hearing Panel to be quasi-judicial in nature. There can be no doubt that the Hearing Panel had jurisdiction over Andrews, an attorney licensed to practice in the Appellate Division for the First Department. The N.Y. Supreme Court and Appellate Division both found that the Hearing Panel's Report has collateral estoppel effect with respect to the Debtor. This court will not question the findings of the state court as they relate to state law determinations. *See Kelleran*, 825 F.2d at 694. In sum, there is no merit in the Debtor's argument that under New York law the Hearing Panel's Report cannot have collateral estoppel effect with respect to the Debtor.

*Conclusion*

For all of the above reasons, Vanderbilt's motion for summary judgment is granted and the Debtor's cross-motion for summary judgment is denied. Vanderbilt's judgment, in the amount of $1,669,562.96, is non-dischargeable.

Submit an order consistent with this Decision.